1  Patrick C. Keeley (*Pro Hac Vice*)

2  PICCIONE, KEELEY & ASSOCIATES, LTD.
   122C South County Farm Road

3  Wheaton, Illinois 60187
   Telephone: (630) 653-8000

4  Facsimile: (630) 653-8029

5
   Peter C. Haley, SBN 41724
6  J. Scott Miller, SBN 256476
   NIELSEN, HALEY & ABBOTT LLP
7  44 Montgomery Street, Suite 750
   San Francisco, California 94104
8  Telephone: (415) 693-0900
   Facsimile: (415) 693-9674
9

10  *Attorneys for Plaintiffs*

11              **UNITED STATES DISTRICT COURT**

12         **SOUTHERN DISTRICT OF CALIFORNIA**

13                                    '10 CV 2130 H        RBB

14  O'M AND ASSOCIATES, LLC, an       )  CASE NO.:
    Illinois limited liability company, d/b/a  )
15  O'Malley and Associates; PRESERVE  )  **VERIFIED COMPLAINT FOR**
16  CAPITAL, LLC, an Illinois limited  )  **BREACH OF CONTRACT,**
    liability company; and MBM        )  **BREACH OF FIDUCIARY DUTY,**
17  SETTLEMENTS, LLC, an Illinois limited )  **CONVERSION, UNJUST**
18  liability company,                )  **ENRICHMENT, DECLARATORY**
                                       )  **JUDGMENT, BREACH OF ORAL**
19              Plaintiffs,            )  **AGREEMENT, NEGLIGENT**
                                       )  **INTERFERENCE WITH**
20          vs.                        )  **PROSPECTIVE ECONOMIC**
                                       )  **ADVANTAGE AND INJUNCTIVE**
21  BRENDAN K. OZANNE, BRIAN C.        )  **RELIEF.**
22  DAWSON, AND DAWSON & OZANNE, )
    a California general partnership, as escrow )
23  agent; MATTEW STOEN, individually  )
    and as manager and agent for KODIAK )  **DEMAND FOR JURY TRIAL.**
24  FAMILY, LLC, a Nevada limited liability )
    company; KODIAK FAMILY, LLC       )
25  individually and as agent for XYZ   )  **[Verified Motion for Temporary**
26  CORPORATION,                      )  **Restraining Order, Memorandum in**
                                       )  **Support, Motion for Leave to File Under**
27          Defendants.               )  **Seal and Exhibits and Affidavits in**
                                       )  **Support filed concurrently]**
28  _____       )

FILED

2010 OCT 13  PM 3:00

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

1   Now Comes O'M and Associates, LLC, an Illinois limited liability company doing

2   business as O'Malley and Associates, Preserve Capital, LLC, an Illinois limited liability

3   company, and MBM Settlements, LLC, an Illinois limited liability company, by and

4   through their attorneys, Piccione, Keeley & Associates, Ltd., and Nielsen, Haley and

5   Abbot LLP, and for their Complaint against Brendan K. Ozanne, Brian C. Dawson, and

6   Dawson and Ozanne, a California general partnership, as escrow agent; Matthew Stoen,

7   individually and as manager and agent for Kodiak Family, LLC, a Nevada limited

8   liability company; Kodiak Family, LLC, individually and as agent for XYZ Corporation,[1]

9   a pseudonym for a corporation of a foreign state the name of which may be subject to a

10  confidentiality agreement ("Buyer").

11

12                                  **INTRODUCTION**

13  1.      This case concerns an escrow agreement executed in anticipation of the sale of

14  certain life insurance policies by plaintiffs to the Buyer.  Pursuant to the escrow

15  agreement with Defendants, the plaintiffs provided nearly $700,000 to be held in escrow

16  by the defendant escrow agent.  The plaintiffs, as sellers, entered into a contract to

17  effectuate the sale of the policies, and complied with all requirements thereof; however,

18  the sale never closed, through no fault of plaintiffs.  The escrow money was fully

19  refundable to plaintiffs pursuant to the terms of the escrow agreement.  However,

20  Defendants have wrongfully and deliberately retained the funds.  Moreover, Defendants

21  are liable for wrongful conduct resulting in the failure of the sale to close and interference

22  with plaintiffs' economic benefit to be derived from the sale of their clients' Life Policies.

23  No sale of the Life Policies ever took place, and the Plaintiffs have incurred costs alone of

24  more than one million dollars related to the Policies as a result.

25

26

27

28

---

[1] XYZ Corporation is not the actual name of the corporation. O'Malley and Associates entered into a Confidentiality, Non-Disclosure and Non-Circumvention Agreement with Matthew Stoen and his affiliates which may prohibit disclosure of the identity of Buyer, as more fully pleaded below.

## THE PARTIES, JURISDICTION AND VENUE

2.   Plaintiff O'M and Associates, LLC ("O'Malley and Associates") is an Illinois limited liability company doing business in Downers Grove, Illinois and elsewhere.  O'Malley and Associates is in the business of providing financial services and insurance based products, including life insurance products.  Michael O'Malley, the manager and principal of O'M and Associates, acted as agent for Preserve Capital, LLC ("Preserve").

3.   Preserve is an Illinois limited liability company, doing business in Chicago, Illinois and elsewhere, which purchased life insurance policies for investment and acquired the right to sell on behalf of certain of its clients, beneficial interests in insurance trusts holding life insurance policies.  (Life insurance policies and beneficial interests in life insurance trusts are collectively referred to hereinafter as "Life Policies").

4.   Preserve is the sole member of MBM Settlements, LLC ("MBM"), also an Illinois limited liability company doing business in Chicago, Illinois and elsewhere. (O'Malley and Associates, Preserve and MBM are collectively referred to hereinafter as "Plaintiffs"; Preserve and MBM are sometimes referred to herein as "Sellers").

5.   Brendan Ozanne entered into and executed the escrow agreement as escrow agent, and pursuant to the escrow agreement the escrow funds deposited by plaintiff were wired to Dawson & Ozanne's IOLTA account at Wells Fargo Bank. Brendan Ozanne is a California attorney practicing law with the law firm of Dawson & Ozanne.  On information and belief, Brendan Ozanne is a resident of San Diego County, California.

6.   Dawson & Ozanne is a California general partnership with its principal place of business in La Jolla, California, San Diego County, California.  Brian C. Dawson is a general partner in the partnership of Dawson & Ozanne and a signatory on the account to which Preserve wired the escrow funds pursuant to the escrow agreement. (Brendan Ozanne, Brian Dawson, and Dawson & Ozanne are collectively referred to as "Ozanne").

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

7.    Matthew Stoen executed the escrow agreement for Kodiak Family, LLC ("Kodiak") as the Buyer's agent. Stoen is a manager of Kodiak, a Nevada Limited Liability Company doing business in San Diego County, California and elsewhere. Matthew Stoen is a resident of La Jolla, San Diego County, California.

8.    At all times relevant hereto, Stoen and Kodiak acted as agents for Ozanne, and Ozanne acted as agent for Kodiak.

9.    This Court has jurisdiction of this action pursuant to 28 U.S.C. Sec.1332(a)(1) in that there is complete diversity of citizenship between Plaintiffs and all Defendants and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

10.   Venue is proper pursuant to 28 U.S.C. §1391.

## BACKGROUND

11.   Preserve and its clients were required to pay monthly premiums on the Life Policies and in some cases made loan payments on loans secured by such policies. Certain of Preserve's clients had indicated they wished to sell their life insurance policies. Preserve began to seek buyers for the Life Policies.

12.   Michael O'Malley of O'Malley and Associates was introduced to Matt Stoen of Kodiak as a source of potential buyers of Life Policies.  Stoen indicated he had sources which would purchase millions of dollars worth of such Life Policies.

13.   In late December, 2009, O'Malley and Associates provided information to Stoen regarding 28 Life Policies which Preserve on behalf of the owners had available for potential sale, and disclosed all information regarding the Policies, including the fact that some of those policies were subject to outstanding loans against the policies.  In their initial conversations, O'Malley advised Stoen about the existence of the loans in connection with the policies and provided him documentation related to those loans.  The loans were to be paid off from the proceeds of the sale of the policies.

14.   Thereafter, in late December, 2009, Preserve requested that Stoen and/or

1    Kodiak provide services for it by finding a buyer for its Life Policies, and agreed to pay

2    Stoen a finder's fee equal to one percent (1%) of the purchase price of Life Policies

3    purchased by any such buyer upon consummation of the sale.  Stoen agreed to provide the

4    services as requested by Preserve, and agreed that any such sale would take place within

5    approximately the first six months of 2010.

6

7                        **THE ESCROW AGREEMENT**

8            15.    As a result of Michael O'Malley's conversations with Stoen and

9    information provided to him, on January 12, 2010, O'Malley and Associates received

10   correspondence from Brendan Ozanne on behalf of his client, Kodiak Family LLC.  The

11   correspondence stated that Kodiak Family LLC had secured a buyer for five (5) insurance

12   policies, to wit, the Grammer (3) and Korkmas (2) policies.

13           16.    The January 12, 2010 correspondence O'Malley and Associates received

14   correspondence from Ozanne for which the subject line was, "Offer on Life Policies."

15   The correspondence described an offer for purchase of the five Life Policies identified

16   above. The offer was made by Ozanne's client, Kodiak, on behalf of Kodiak's principal

17   as the intended buyer; the intended buyer was not identified in the letter.  Kodiak's

18   principal was later disclosed as Buyer, (as set forth in the correspondence described in

19   Paragraph 17.)  A copy of the January 12 "Offer on Life Policies" is **Exhibit A** hereto and

20   is incorporated herein by reference.[2]

21           17.    The Offer on Life Policies contemplated subsequent documents to

22   consummate the transaction, including an escrow agreement for the proceeds of the

23   transaction and a purchase agreement.  The offer on Life Policies contained the terms for

24   the escrowed funds or "break up" fee required by Ozanne, Kodiak and Buyer to begin the

25   sale process.

26   _____

27   [2] Pursuant to the Confidentiality Agreement described in Paragraph 20, Plaintiffs will
     move to have the Exhibits which are referenced but not attached to the Complaint filed
28   under seal.

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

18.    On January 13, 2010, Mike O'Malley on behalf of O'Malley and Associates executed and accepted the Offer on Life Policies as amended by an Addendum initialed by the parties ("Addendum").  A copy of that Addendum is attached hereto as **Exhibit A1** and incorporated herein by reference. The "Offer on Life Policies," together with the Addendum, constitutes the Escrow Agreement.

19.    Pursuant to the Escrow Agreement, Ozanne is identified as the Escrow Agent and attorneys for Kodiak for the transaction set forth in the Escrow Agreement. Kodiak executed the Escrow Agreement as the Buyer's Agent.  O'Malley and Associates executed the Escrow Agreement as the Seller's Agent.

20.    On February 2, 2010, O'Malley and Associates entered into a Confidentiality, Non-Disclosure and Non-Circumvention Agreement ("NDA") with Matthew Stoen and his affiliates as the "Disclosing Party," and O'Malley and Associates as the Receiving Party.  A copy of the NDA is attached hereto as **Exhibit A2** ("NDA"). The NDA prohibits disclosure of Confidential Information defined as:

> "(i) all information disclosed in tangible form by the disclosing party as contained in the tangible materials you will receive and (ii) all information disclosed orally or otherwise in tangible form by the disclosing party relating to or referring to the identity of the disclosing party's private funders and life settlement buyers.  "Confidential Information" includes, but is not limited to, the following types of information and other information of a similar nature: **offers of settlement**, closing documentation, **identity of buyers and funders** and their respective affiliates, including their life settlement representatives and attorneys of record for the life settlement transactions."  (emphasis added)

Plaintiffs will seek to identify the Buyer with such identity filed under seal or otherwise by court order.

21.    Preserve and/or its affiliate, MBM, was the authorized seller of the Life Policies.  ("Seller").

22.    Pursuant to the Escrow Agreement, Seller was required to wire a "break up"

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1   fee in the amount of 3% of the face amount of the purchase price for the identified Life

2   Policies, or $102,639.60, to the Dawson & Ozanne IOLTA trust account at Wells Fargo

3   Bank in San Diego, CA ("Escrow Account").  Seller wired that amount to the Escrow

4   Account on January 14, 2010.

5        23.   Seller and Matthew Stoen and Kodiak on behalf of the Buyer subsequently

6   designated 23 additional Life Policies designated for purchase by the Buyer as set forth on

7   **Exhibit A3,** which is incorporated herein by reference.  Pursuant to the Escrow

8   Agreement, Seller wired an additional 3% based upon the purchase price for each such

9   policy.  Seller wired an additional $31,077 to the Escrow Account on January 14, 2010;

10   an additional $145,800 on January 21, 2010.

11        24.   The parties executed a letter dated February 11, 2010 which described the

12   final "due diligence" fee for the additional policies subject to the offer.  A copy of that

13   letter is **Exhibit A4,** incorporated herein by reference.  The February 11, 2010 letter

14   expressly incorporated the Addendum, which provided for the refund of the "break up" or

15   "due diligence" fee.  Pursuant to the February 11, 2010 letter the final additional payment

16   was not due until receipt of the formal offer from the Buyer.

17        25.   Pursuant to the Escrow Agreement, if the transaction described therein for

18   the sale and purchase of the Life Policies ("Transaction") failed to close for any reason

19   other than the three reasons attributable to Seller's failure as specified therein, then the

20   Escrow Amount, plus interest at 6% per annum, would be fully refundable to Plaintiffs no

21   later than the date the Transaction was scheduled to close.

22        26.   On February 16 2010, Ozanne forwarded to Plaintiffs a letter addressed to

23   Ozanne regarding the Seller's portfolio of policies and identifying the Buyer which was to

24   be the ultimate buyer of the Life Policies.  A copy of the February 16, 2010 letter is

25   **Exhibit B**, incorporated herein by reference.  This letter was the offer letter directly from

26   the Buyer to Preserve for the 28 Life Policies.  Because Ozanne was dealing directly with

27   the Buyer regarding the Transaction, Ozanne, acted as Seller's agent with respect to the

28

1    offer and accepted on behalf of Preserve the Buyer's offer to purchase the Life Policies

2    from Preserve.

3         27.    On February 16, 2010, Preserve wired an additional $399,234 to the Escrow

4    Account pursuant to the Escrow Agreement and the February 11, 2010 letter.  The total

5    amounts Seller transferred to the Escrow Account totaled $678,750.60 ("Escrow

6    Amount").

7         28.    On February 18, 2010, Ozanne sent a letter to O'Malley and Associates

8    enclosing the executed offer from the Buyer, along with:  a status letter from the Buyer

9    dated February 18, 2010, a certificate of financial capability from the Buyer, and draft

10   closing documentation.  That correspondence, attached hereto as **Exhibit B1** and

11   incorporated herein by reference, also included a representation by Ozanne that he had

12   established four specialty IOLTA accounts for the Transaction.  The enclosures to Exhibit

13   B1 are **Group Exhibit B2**, incorporated herein by reference.

14        29.    Ozanne subsequently informed Plaintiffs that the Transaction would occur

15   through the sale by Preserve of its interest in MBM, which held the assignments of the

16   Life Policies.  Preserve was the sole member of MBM.  Preserve would then transfer its

17   interest in MBM to the Buyer through a Limited Liability Company Interest Sale and

18   Assignment Agreement ("Purchase Agreement").

19        30.    Preserve and Bank of Utah, as Trustee for the Buyer's Trust, XYZ Trust,

20   executed the Purchase Agreement on or about April 15, 2010 for purchase of the Life

21   Policies by Buyer through transfer of Preserve's Interest in MBM Settlements, LLC.  The

22   Purchase Agreement was executed for the Buyer by Bank of Utah, not individually, but as

23   Trustee for the XYZ Trust.  An executed copy of the Purchase Agreement is **Exhibit C**,

24   incorporated herein by reference.

25        31.    Plaintiffs provided to Ozanne all documents requested by the Buyer in its

26   correspondence of February 18, 2010 (to Ozanne), as well as all copies or originals of

27   documents required to be provided pursuant to the Purchase Agreement, for the Life

28   Policies.  All signatures required to close the Transaction were provided by Plaintiffs,

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1  and none of the life insurance carriers for any of the Life Policies involved in the

2  Transaction contested the validity of any of the Policies.

3        32.    Plaintiffs were ready, willing and able to close the Transaction beginning in

4  April, 2010.  Despite Seller being ready, willing and able to close the Transaction

5  beginning in April, 2010, Buyer, Kodiak and Ozanne repeatedly delayed the closing date

6  for the Transaction without fault of Plaintiffs and without any explanation.

7        33.    On or about April 30, 2010, Ozanne forwarded to Plaintiffs a letter dated

8  April 30, 2010, written by Bank of Utah, as Trustee for the XYZ Trust, to Ozanne.  The

9  letter confirmed that the Seller's life insurance portfolio met Buyer's purchase

10  requirements and set a closing date of May 15, 2010 for the Transaction described in the

11  Escrow Agreement.  A copy of that correspondence is **Exhibit D,** incorporated herein by

12  reference.

13        34.    In response to Plaintiffs' requests to confirm that the funds were being held

14  in escrow, on or about May 14, 2010, Ozanne provided Plaintiffs an e-mail attaching a

15  statement for the Escrow Account in which the Escrow Amount had been deposited,

16  showing a balance of approximately $876,000.  A copy of that e-mail and statement is

17  attached hereto as **Group Exhibit E** and incorporated herein by reference.

18        35.    Although Plaintiffs had wired all of the Escrow Amount to the Escrow

19  Account prior to the date of the statement in May, 2010, the statement reflected that no

20  direct wire deposits had been made since September 6, 2005.

21        36.    On May 14, 2010, Ozanne sent Plaintiffs correspondence stating that the

22  closing on the Transaction described in the Escrow Agreement policies would occur on or

23  before May 31, 2010.  A copy of that correspondence is attached hereto as **Exhibit F** and

24  incorporated herein by reference.

25        37.    The closing on the Transaction did not occur on or before May 31, 2010 and

26  has not occurred to date despite Plaintiffs' repeated efforts.

27        38.    In mid-July, 2010, Ozanne provided Plaintiffs with a new Limited Liability

28  Company Interest Sale and Assignment Agreement for the sale of Preserve's interest in

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1  MBM ("New Purchase Agreement").  The purchaser identified in the new purchase

2  agreement was not the Buyer, but ABC Corporation, a California corporation.

3         39.     Preserve Capital, LLC and ABC Corporation executed the New Purchase

4  Agreement.  An executed copy of the New Purchase Agreement is **Exhibit G**,

5  incorporated herein by reference.  No closing occurred pursuant to the New Purchase

6  Agreement, and no sale of the Life Policies has occurred.

7         40.     On August 6, 2010, Plaintiffs, through counsel, sent a written demand to

8  Ozanne and Kodiak, as Buyer's Agent, demanding return by Ozanne, as Escrow Agent, of

9  the Escrow Amount pursuant to the terms of the Escrow Agreement.  A copy of that

10  correspondence is attached hereto as **Exhibit H** and incorporated herein by reference.

11         41.     The Escrow Amount remained in Ozanne's possession and was not

12  transferred to Buyer.  In August, 2010, Ozanne stated that the Defendants required a

13  general release of claims in order to return the Escrow Amount.

14         42.     Plaintiffs, through counsel, sent another demand letter dated September 8,

15  2010 to Ozanne demanding return by Ozanne, as Escrow Agent, of the Escrow Amount

16  pursuant to the terms of the Escrow Agreement.  A copy of that correspondence is

17  attached hereto as **Exhibit H1** and incorporated herein by reference.

18         43.     Ozanne has failed to respond to the demand letters or to return telephone

19  calls from Plaintiffs or their counsel.

20         44.     Plaintiffs, through counsel, sent another demand letter dated September 16,

21  2010 to Ozanne demanding return by Ozanne, as Escrow Agent, of the Escrow Amount

22  pursuant to the terms of the Escrow Agreement.  A copy of that correspondence is

23  attached hereto as **Exhibit H2** and incorporated herein by reference.

24         45.     To date, Ozanne, Kodiak and Buyer have failed and refused to return to

25  Plaintiffs the Escrow Amount plus the 6% interest per annum in violation of the Escrow

26  Agreement.  Meanwhile, Plaintiffs have incurred damages including (but not limited to)

27  premiums on Life Policies and interest costs, which alone exceed approximately One

28

1  Hundred Thirty Two Thousand Two Hundred Ninety Three Dollars ($132,293) per

2  month.

3

4                                    **COUNT I**
                          **Beach of Contract – Escrow Agreement**
5              **(Ozanne, Dawson, Dawson & Ozanne, Stoen, Kodiak and Buyer)**

6         46 – 91. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 45 as

7  Paragraphs 46 through 91 of this Count I.

8         92.     Upon acceptance of the Offer on Life Policies, as amended by Addendum,

9  by Plaintiffs and execution by all parties, the Offer became a binding agreement (the

10  Escrow Agreement) on the parties.

11        93.     The Escrow Agreement provides:

12

13        "The break-up fee, together with interest at 6% per annum, shall be fully
          refundable to Seller if the life settlement transaction closes, by credit at
14        closing, *or if the transaction fails to close for any other reason, including*
          *the parties' failure to agree on the terms of the escrow and purchase*
15        *agreement or Buyer's failure to perform any of its obligations hereunder.*
          *In the latter circumstances, Buyer shall pay Seller such deposited amount,*
16        *or deposit the funds in an account designated by Seller, no later than the*
          *date on which closing was scheduled to occur."* (emphasis added).
17

18

19        94.     Plaintiffs and Seller performed all of their obligations pursuant to the

20  Escrow Agreement.

21        95.     The Transaction failed to close, and failed to close for a reason other than

22  any of the causes attributable to Plaintiffs pursuant to the Escrow Agreement.  Plaintiffs

23  were accordingly entitled to the return and/or payment of the Escrow Amount plus

24  interest.

25        96.     Plaintiffs demanded return of the Escrow Amount held by Ozanne as

26  Escrow Agent by written demand upon Ozanne and Kodiak, as Buyer's Agent.

27        97.     Despite said demand, Defendants have failed and refused to return and pay

28  the Escrow Amount plus 6% interest to Plaintiffs, in breach of the Escrow Agreement.

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1   Ozanne states that he is not releasing the Escrow Amount because of instruction from

2   Matthew Stoen to retain the Escrow Amount pending receipt of a written release of all

3   claims from the Plaintiffs; however, there is no such requirement in the Escrow

4   Agreement.

5          WHEREFORE, your Plaintiffs respectfully request this Court to enter an order:

6          a.      Granting judgment for Plaintiffs and against Defendants on this Count I of

7   the Complaint and awarding Plaintiffs damages for Defendants' breach of the Escrow

8   Agreement, including but not limited to the Escrow Amount deposited with Ozanne

9   ($678,750.60), plus six percent (6%) interest thereon from the date of deposit; and

10          b.      Imposing a constructive trust on $678,750.60, plus interest at 6% since

11   deposit, on the funds in the Escrow Account; and

12          c.      Ordering Defendants to turn over the Escrow Amount to Plaintiffs, plus

13   interest at 6% from the date of deposit; and

14          d.      Awarding such other relief as this Court deems just.

15

## COUNT II
### Beach of Fiduciary Duty
### Ozanne, Dawson, Dawson & Ozanne

18          98 – 143.  Plaintiff repeats and realleges the allegations of Paragraphs 1 through 45

19   as Paragraphs 98 through 143 of this Count II.

20          144.    As Escrow Agent, Ozanne owed a fiduciary duty to Plaintiffs to comply

21   with the instructions for the return of the Escrow Amount as set forth in the Escrow

22   Agreement.

23          145.    When the Transaction with Buyer failed to close on or before May 31,

24   2010, Plaintiffs were entitled to return of the funds (plus 6% interest) they deposited in

25   the Escrow Account held by Ozanne.

26          146.    Plaintiffs demanded and directed Ozanne to return the Escrow Amount

27   Plaintiffs and/or Seller deposited in the Escrow Account, with 6% interest as provided by

28   the Escrow Agreement.

147.   An escrow agent or holder owes the parties to an escrow agreement a fiduciary duty to strictly comply with escrow instructions.

148.   Ozanne have failed and refused to comply with Plaintiffs' instructions as set forth in the Escrow Agreement and in Plaintiffs' letters, by its attorneys, dated August 6, 2010, September 8, 2010, and September 16, 2010.

149.   Such failure of Ozanne to return the Escrow Amount held in the Escrow Account was a breach of Ozanne's fiduciary duty to Plaintiffs.  Ozanne further breached their fiduciary duties by placing Matthew Stoen's and/or Kodiak's interest in obtaining a release of claims to which Stoen and/or Kodiak were not entitled over Plaintiffs' interest in return of their escrowed funds.

150.   Plaintiffs will suffer irreparable injury and do not have an adequate legal remedy for the breach of fiduciary duty by Ozanne because the Escrow Amount, plus interest, is being released, spent, disbursed to third parties or otherwise dissipated.

151.   As a result of Ozanne's breach of fiduciary duties, Plaintiffs are entitled to equitable relief including injunctive relief and full restitution or return of the Escrow Amount to Plaintiffs, plus interest.

WHEREFORE, your Plaintiffs respectfully request this Court to:

a.    Enter a temporary restraining order and preliminary and permanent injunctions which require Ozanne to retain the Escrow Amount, plus interest at 6%, in the Escrow Account and which restrains and enjoins Ozanne from releasing, spending, disbursing to third parties or otherwise dissipating the Escrow Amount, plus interest;

b.    Enter an order requiring Ozanne to return the Escrow Amount, plus 6% interest, to Plaintiffs;

c.    Award Plaintiffs all costs and expenses incurred as a result of Ozanne's breach of fiduciary duties; and

d.    Order turnover of the Escrow Amount plus interest to Plaintiffs, or restitution to Plaintiffs by Defendants Dawson, Ozanne and Dawson & Ozanne in the amount of $678,750.60, plus interest at 6% since the time of deposit; or

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1       e.     Impose a constructive trust on $678,750.60, plus interest at 6% since

2 deposit, on the funds in the Escrow Account; and

3       f.     Enter an order requiring Defendants to provide an accounting showing that

4 the Escrow Amount plus interest at 6% from the time of deposit, remains in the Escrow

5 Account; or, if the Escrow Amount is no longer in the Escrow Account, ordering

6 Defendants to provide information, including account information, for the location of the

7 Escrow Amount; and

8       g.     Enter judgment for Plaintiffs against Defendants for $706,569.50, which

9 represents  the Escrow Amount ($678,750.60), plus six percent (6%) interest through

10 September 30, 2010 ($27,818.90); and

11       f.     Grant such other relief as this Court deems just.

12

13                         **COUNT III**

                          **Conversion**

14 **Ozanne, Dawson, Dawson & Ozanne, Stoen and Kodiak**

15      152 – 199.  Plaintiff repeats and realleges Paragraphs 1 through 45 as Paragraphs

16 152 through 197 of this Count III as if fully set forth herein.

17      198.    Plaintiffs owned the funds it deposited in the Escrow Account.

18      199.    Upon failure of the Transaction to close as scheduled without fault of

19 Plaintiffs as set forth in the Escrow Agreement, Plaintiffs were entitled to possession of

20 the Escrow Amount they had wired to Ozanne, plus interest in the amount of 6% from the

21 date of deposit.

22      200.    By refusing to return the Escrow Amount as demanded by Plaintiffs,

23 Defendants have wrongfully exercised dominion and control over funds held in the

24 Escrow Account which belong to Plaintiffs.

25      201.    As a result of Defendants' failure to return said funds, Plaintiffs have

26 suffered damages including but not limited to the amount of the Escrow Amount, plus

27 interest, and the costs of efforts to recover the Escrow Amount.

28      WHEREFORE, your Plaintiffs respectfully request this Court to:

a.     Enter judgment in favor of Plaintiffs and against Defendants on Count III of their Complaint in the amount of $706,569.50 (including interest through September 30, 2010), plus costs; and

b.     Award damages pursuant to Cal. Civ. Code Section 3336, including but not limited to: i) the Escrow Amount deposited by Plaintiffs with Ozanne and wrongfully retained by Ozanne, plus interest, and ii) all costs incurred by Plaintiffs in an attempt to recover their funds; and

c.     Impose a constructive trust on $678,750.60, plus interest at 6% since deposit, on the funds in the Escrow Account;

d.     Order turnover of the Escrow Amount plus interest by Ozanne to Plaintiffs; and

e.     Grant such other relief as this Court deems just.

## COUNT IV
### Unjust Enrichment
### (Ozanne, Stoen, Kodiak)

202 – 247.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through 45 above as if fully set forth as Paragraphs 202 through 247 of this Count IV.

248.   Because the Escrow Amount, plus interest, belongs to Plaintiffs pursuant to the terms of the Escrow Agreement, Defendants have been unjustly enriched by the retention by Defendants of the Escrow Amount, plus interest.

249.   Based upon the unjust enrichment of Defendants, Defendants have become involuntary trustees of the funds for Plaintiffs.

WHEREFORE, your Plaintiffs respectfully request this Court to:

a.     Enter judgment for Plaintiffs and against Defendants on Count IV of this Complaint in the amount of $706,569.50 (which includes six percent interest through September 30, 2010); and

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1       b.    Impose a constructive trust on the $678,750.60, plus interest at 6% since the

2 time of deposit ($706,569.50 with interest through September 30, 2010) in the Escrow

3 Account; and

4       c.    Grant Plaintiffs an accounting with respect to the Escrow Account; and

5       d.    Enter an order directing Defendants not to dissipate or disburse said funds

6 held in the Escrow Account pending further order of this Court; and

7       e.    Enter an order directing Defendants to return the Escrow Amount, plus

8 interest at 6% since the time of deposit, to Plaintiffs; and

9       f.    Grant such other relief as this Court deems just.

10

11                    **COUNT V**
                **Declaratory Judgment**

12                  **(All Defendants)**

13     250 – 295.  Plaintiffs repeat and reallege the allegations of Paragraphs 1 through

14 45 above as if fully set forth as Paragraphs 250 through 295 of this Count V.

15     296.   Plaintiffs have a right to the Escrow Amount deposited in the Escrow

16 Account, and have demanded Defendants' return said funds.

17     297.   Despite Plaintiffs' demands, Defendants have failed and refused to return

18 said funds to Plaintiffs.

19     298.   An actual, substantial controversy exists among the parties, particularly

20 concerning the right to the Escrow Amount held by Defendants in the Escrow Account.

21     WHEREFORE, your Plaintiffs respectfully request this Court, pursuant to the

22 Declaratory Judgment Act, 28 U.S.C. Sec. 2201, or, in the alternative, California Civ.

23 Code Sec. 1060, to enter a judgment declaring the following:

24       a.    The closing of the Transaction did not occur for a reason other than any of

25 the causes attributable to Plaintiffs pursuant to the Escrow Agreement; and

26       b.    That Defendants are obligated to immediately return to Plaintiffs the

27 $678,750.60, plus interest at 6%  since deposit, from the Escrow Account, or, in the

28

1    alternative, that Plaintiffs are entitled to an immediate award of damages against

2    Defendants in an equivalent amount; and

3           c.      That Defendants are holding the Escrow Amount plus interest ($678,750.60,

4    plus interest at 6% since deposit) in the Escrow Account as constructive trustees for

5    Plaintiffs; and

6           d.      Granting such other relief as this Court deems just.

7

8                                       **COUNT VI**
                                  **Breach of Oral Agreement**
9                             **(Stoen and Kodiak Family LLC)**

10          299 – 344.  Plaintiffs repeat and reallege the allegations of Paragraphs 1 through

11   45 as if fully set forth as Paragraphs 299 through 344 of this Count VI.

12          345.    Preserve and Stoen and/or Kodiak LLC entered into an oral agreement

13   through which Stoen and/or Kodiak LLC would find buyers for Preserve's Life Policies

14   for a sale to take place within the first six months of 2010 ("Oral Agreement").

15          346.    Pursuant to the Oral Agreement, Stoen and/or Kodiak LLC would find a

16   buyer ready, willing and able to purchase Preserve's Life Policies, and would use his/its

17   best efforts to work with the buyer on Preserve's behalf to consummate the sale.  Preserve

18   would provide all documentation typically requested in such transactions to the Buyer

19   upon the Buyer's request for such documentation or as required in closing documents.

20   Upon the closing of the Transaction, Stoen and/or Kodiak would receive one percent (1%)

21   of the purchase price of the Life Policies sold as a finder's fee.

22          347.    XYZ Corporation was identified as the Buyer for all of Preserve's Life

23   Policies in mid-February, 2010.  Preserve executed a Purchase Agreement with the

24   Trustee for the XYZ Trust, and provided all documentation requested by XYZ

25   Corporation (through Stoen, Kodiak and/or Ozanne) and required pursuant to the

26   Purchase Agreement.  Preserve was ready, willing and able to close the transaction with

27   the XYZ Corporation and XYZ Trust.  XYZ Corporation notified Preserve that it was

28

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1   satisfied with the portfolio of Life Policies and the documentation it had received, and
2   was prepared to close the Transaction beginning in April, 2010.

3          348.   Stoen and/or Kodiak were the intermediaries between Preserve and Buyer;
4   Plaintiffs would not allow Preserve to speak to the Buyer or the Buyer's attorneys, or to
5   have any contact with XYZ Corporation whatsoever.

6          349.   After the transaction did not close on May 15, 2010, and was rescheduled
7   for May 31, Stoen and/or Kodiak did not provide any reason or explanation for the change
8   or request any additional documentation from Preserve nor did they describe what reason
9   if any Buyer gave them for not closing the Transaction.  Stoen and/or Kodiak repeatedly
10  insisted that the closing was delayed but would occur.  The closing of the Transaction did
11  not occur.

12         350.   Kodiak and/or Stoen owed Preserve an implied duty of good faith and fair
13  dealing in working on Preserve's behalf in providing the services pursuant to the Oral
14  Agreement to work toward the closing of the Transaction.

15         351.   Kodiak and/or Stoen acted in bad faith to frustrate the benefits of the Oral
16  Agreement and accordingly breached its/their duty of good faith and fair dealing in one or
17  more of the following ways:

18         •   failing to disclose to Preserve information from the Buyer regarding the
19             Transaction and/or the XYZ Corporation's requirements;

20         •   failing to act in good faith on behalf of Preserve in his/its dealings with
21             XYZ Corporation;

22         •   failing to work toward the closing of the Transaction with XYZ Corporation
23             on Preserve's behalf;

24         •   failing to accurately portray the nature of the Preserve Life Policies to XYZ
25             Corporation; and

26         •   failing to allow Preserve to communicate directly with XYZ Corporation or
27             its representatives;

28

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1         •   failing to disclose why the closing with the Buyer was repeatedly postponed

2            and did not take place; and

3         •   otherwise failing to act in good faith and to use his/its best efforts to pursue

4            and close the Transaction.

5       352.   Preserve complied with all requirements of the Oral Agreement. It provided

6 all documents requested by Stoen and/or Kodiak and/or XYZ Corporation within any time

7 period established for providing such documents.

8       353.   As a result of Stoen and/or Kodiak's breaches of the Oral Agreement, the

9 Transaction with XYZ Corporation did not close.

10       354.   At the time the parties entered into the Oral Agreement in late December,

11 2009, Stoen and/or Kodiak knew that:

12         •   Preserve had or would obtain written authorizations for the assignments of

13            the Life Policies and the sale from its clients;

14         •   Preserve would be incurring interest charges for the loans against the Life

15            Policies until the Transaction closed; and

16         •   Preserve was required to pay the premiums on the Life Policies pending the

17            sale of the Life Policies.

18       355.   As a result of Stoen and/or Kodiak's breaches of the implied duty of good

19 faith and fair dealing, the Transaction did not close and Preserve incurred compensatory

20 and special damages, including but not limited the loss of the sale of the Life Policies for

21 the price offered by the Buyer; interest and premium costs on the Life Policies accruing

22 since April 15, 2010, and loss of reputation and goodwill of its lenders and clients.

23 WHEREFORE, your Plaintiffs respectfully request this Court to:

24       a.   Enter judgment in favor of Preserve and against Matthew Stoen and Kodiak

25 Family, LLC on Count VI of the Complaint;

26       b.   Award Preserve compensatory and special damages suffered by Preserve as

27 a result of Stoen's and Kodiak's breach of the Oral Agreement, in excess of Two Million

28 Dollars ($2,000,000.00); and

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1   c.   Grant such other relief as this Court deems just.

2

3                          **COUNT VII**
                       **Breach of Fiduciary Duty**
4      **(Brendan Ozanne, Brian Dawson and Dawson & Ozanne)**

5      356 – 401.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through

6   45 as and for Paragraphs 356 through 401 of this Count VII as if fully set forth herein.

7      402.   Brendan Ozanne acted as agent for Preserve in executing the February 16,

8   2010 offer letter from XYZ Corporation and in dealing with XYZ Corporation in

9   connection with the Transaction to the exclusion of Preserve.

10     403.   As Preserve's agent with respect to the Transaction, Ozanne owed Preserve

11  a fiduciary duty to act in Preserve's best interest with respect to the Transaction, and to

12  work toward the closing of the Transaction.

13     404.   Ozanne breached his fiduciary duty to Preserve by:

14     •   failing to disclose to Preserve information from the Buyer regarding the

15         Transaction and/or the XYZ Corporation's requirements;

16     •   failing to act on behalf of Preserve in its dealings with XYZ Corporation,

17         but instead acting to further his own interests and/or those of Matthew Stoen

18         and Kodiak, and failing to advise Preserve when there was a conflict of

19         interest;

20     •   failing to work in good faith toward the closing of the Transaction with

21         XYZ Corporation on Preserve's behalf;

22     •   failing to accurately portray the nature of the Preserve Life Policies to XYZ

23         Corporation; and

24     •   failing to allow Preserve to communicate directly with XYZ Corporation or

25         its representatives.

26     •   otherwise hindering the closing of the Transaction.

27     405.   At all times beginning in late December, 2009, Brendan Ozanne knew that:

28

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

- Preserve had or would obtain written authorizations for the assignments of the Life Policies and the sale from its clients;
- Preserve would be incurring interest charges for the loans against the Life Policies until the Transaction closed; and
- Preserve was required to pay the premiums on the Life Policies pending the sale of the Life Policies.

406.   As a result of Ozanne's breaches of fiduciary duty, the Transaction did not close and Preserve suffered compensatory and special damages.

WHEREFORE, your Plaintiffs respectfully request this Court to:

a.   Enter judgment in favor of Preserve and against Brendan Ozanne on Count VII of the Complaint;

b.   Award Preserve compensatory and special damages suffered by Preserve as a result of Ozanne's breach of fiduciary duty in excess of Two Million Dollars ($2,000,000.00); and

c.   Grant such other relief as this Court deems just.

**COUNT VIII**
**Negligent Interference with Prospective Economic Advantage**
**(Stoen, Kodiak and Ozanne)**

407 – 452.   Plaintiffs repeats and realleges the allegations of Paragraphs 1 through 45 of their Complaint as and for Paragraphs 407 – 452 of this Count VIII

453.   Stoen, Kodiak and Ozanne knew that Plaintiffs' clients had engaged and authorized Plaintiffs to sell their Life Policies for them, and that the clients were advised of, and specifically authorized, the Transaction as a means of doing so.

454.   Preserve's clients were advised as to the amounts they would receive for the sale of their Life Policies through the Transaction.

455.   As a result of the sale of the Life Policies by Plaintiffs on behalf of Preserve's clients through the Transaction, Preserve would realize profit for arranging and facilitating the sale of its clients' Life Policies.

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

456.   Stoen, Kodiak and Ozanne acted as Plaintiffs' intermediaries, agents and fiduciaries with the Buyer in connection with the sale of Life Policies, and accordingly Stoen, Kodiak and Ozanne owed Plaintiffs a duty of due care in their dealings with Buyer on Plaintiffs' behalf.

457.   Stoen, Kodiak and Ozanne were the only persons who communicated with Buyer on Plaintiffs' behalf regarding the Transaction; Plaintiffs and their counsel were prohibited from communicating with Buyer or its counsel by the Defendants.

458.   Stoen, Kodiak and Ozanne knew or should have known that if they didn't act with due care with respect to the Transaction, their actions or omissions would interfere with Plaintiff's economic advantage from the sale of its clients' Life Policies.

459.   As of April 30, 2010, the Buyer indicated in correspondence that it was prepared to proceed with the closing of the Transaction.

460.   Defendants Stoen, Kodiak and Ozanne were negligent in their dealings with Buyer by committing one or more of the following wrongful acts or omissions:

- failing to disclose to Preserve information from the Buyer regarding the Transaction and/or the XYZ Corporation's requirements;
- failing to disclose to Buyer information provided by Preserve in connection with the Transaction; and
- failing to allow Preserve to communicate directly with XYZ Corporation or its representatives;
- placing their own interests above Plaintiffs' interests in connection with the Transaction;

461.   The negligence of Stoen, Kodiak and Ozanne in their dealings and communications with Buyer on Plaintiffs' behalf resulted in the failure of the Transaction to close.

462.   Defendants knew that Plaintiffs would incur damages, including costs associated with the Life Policies, and loss of profits on the sale of their clients' Life

1   Policies, as well as damage to the goodwill and relationships with their clients, as a result

2   of the negligent interference by Stoen, Kodiak and Ozanne with the Transaction.

3       463.   As a result of Defendants' negligent acts and omissions, Plaintiffs suffered

4   damages including but not limited to the loss of profit resulting from the sale of its clients

5   Life Policies to Buyer, and other damages in excess of Two Million Dollars

6   ($2,000,000.00).

7   WHEREFORE, your Plaintiffs respectfully request this Court to:

8       a.   Enter judgment in favor of Preserve and against Stoen, Kodiak and Ozanne

9   on Count VIII of the Complaint;

10       b.   Award Preserve all damages suffered by Preserve as a result of Stoen,

11   Kodiak and Ozanne's  negligent interference with Plaintiffs' prospective economic

12   advantage with its clients, which damages are in excess of Two Million Dollars

13   ($2,000,000.00); and

14       c.   Grant such other relief as this Court deems just.

15

16   **COUNT IX**
   **Injunctive Relief**

17   **(Ozanne, Stoen, Kodiak)**

18       464.   Plaintiffs incorporate the allegations of Count II (Breach of Fiduciary

19   Duty), Count III (Conversion), Count IV (Unjust Enrichment) and Count VII (Breach of

20   Fiduciary Duty) as if fully set forth herein.

21       465.   Defendants have failed and refused to return the Plaintiffs' escrowed funds

22   in an amount in excess of Seven Hundred Thousand Dollars ($700,000), including

23   interest, despite Plaintiffs repeated direction to Defendant pursuant to the Escrow

24   Agreement, Plaintiffs repeated demands for return of their funds.

25       466.   Plaintiffs seek a temporary restraining order, a preliminary injunction and

26   ultimately a permanent injunction: a) requiring Ozanne to retain the Escrow Amount, plus

27   interest at 6%, in the Escrow Account; b) restraining and enjoining Ozanne from

28   releasing, spending, disbursing to third parties or otherwise dissipating the Escrow

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1   Amount, plus interest; and c) requiring  Defendants to return the Escrow Amount, plus
2   6% interest, to Plaintiffs.

3       467.    Absent injunctive relief by this Court, Plaintiffs will suffer irreparable
4   injury in that Ozanne has indicated that he is not treating the Escrow Amount as escrow
5   funds which must be returned to Plaintiffs pursuant to the Escrow Agreement, but as "due
6   diligence funds."

7       468.    Ozanne described the May 14, 2010 balance of the Escrow Account as the
8   amount "remaining from due diligence funds deposited by a number of groups."
9   (emphasis added).

10      469.    By using the word "remaining," Ozanne conveys that he is disbursing or
11  spending funds in the Escrow Account.  Additionally, that the fund is a repository for
12  amounts deposited by more than one group.

13      470.    Ozanne has failed and refused to return the Plaintiff's telephone calls, or
14  their attorneys' telephone calls, which raises additional concerns about recovering the
15  money from the IOLTA Account.

16      471.    Additionally, the statement provided by Ozanne in May, 2010 for the
17  Dawson & Ozanne IOLTA account to which Preserve wired the Escrow Amount does not
18  appear to reflect the wire transfers made by Plaintiffs in January and February, 2010.

19      472.    Issuance of injunctive relief will preserve the status quo while the Court has
20  the opportunity to adjudicate the rights of the parties to this matter.

21      473.    Plaintiffs do not have an adequate remedy at law as damages alone will be
22  meaningless as the account will be disbursed and dissipated.

23      474.    The language of the Escrow Agreement and the sequence of events
24  establish Plaintiffs' likelihood of success on the merits.  Furthermore, the balance of
25  harms rests with granting injunctive relief as Plaintiffs face loss of funds which belong to
26  them, while Ozanne would merely be restrained from disbursing or transferring funds in
27  the Escrow Account up to the Escrow Amount, plus interest.

28

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

1    475.    Brendan Ozanne and Brian Dawson are California attorneys, and the

2    Escrow Account is an IOLTA account.  The public interest favors injunctive relief in

3    favor of Plaintiffs, since Plaintiffs and the public generally rely on attorneys who serve as

4    escrow agents and who deposit funds in IOLTA accounts to abide by rules and

5    agreements governing those accounts and the escrowed funds.

6    WHEREFORE, Your Plaintiffs respectfully request this Court to:

7        a.    Enter a temporary restraining order, a preliminary injunction and ultimately

8    a permanent injunction:

9            i.  requiring Ozanne to retain the Escrow Amount, plus interest at 6%, in the

10              Escrow Account;

11          ii.  restraining and enjoining Ozanne from releasing, spending, disbursing to

12              third parties or otherwise dissipating the Escrow Amount, plus interest;  and

13          iii. requiring Defendants to return the Escrow Amount, plus 6% interest, to

14              Plaintiffs.

15

16                            **DEMAND FOR JURY TRIAL**

17        Plaintiffs hereby demand trial by jury in this action.

18

19    October 13, 2010                    Respectfully submitted,

20

21

22

23

24

25

26

27

28

---

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

**PICCIONE, KEELEY & ASSOCIATES LTD.**

By:
Patrick C. Keeley (*pro hac vice*)
*pkeeley@pkalaw.com*
122C South County Farm Road
Wheaton, Illinois 60187
Telephone: (630) 653-8000
Facsimile: (630) 653-8029

**NIELSEN, HALEY & ABBOTT LLP**
Peter C. Haley, SBN 41724
*phaley@nielsenhaley.com*
J. Scott Miller, SBN 256476
*smiller@nielsenhaley.com*
44 Montgomery Street Street, Suite 750
San Francisco, California 94104
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

***Attorneys for Plaintiffs***

Michael K. O'Malley as Manager of O'M and Associates
LLC, d/b/a O'Malley and Associates

Verified Complaint for Breach of Contract, Fiduciary Duty, Declaratory Judgment, etc.

## Table of Contents of Exhibits to Complaint Verified Complaint for Breach of Contract, Brach of Fiduciary Duty, Conversion, Unjust Enrichment, Declaratory Judgment, Breach of Oral Agreement, Negligent Interference with Prospective Economic Advantage and Injunctive Relief

A1.   Addendum...................................................................27

A2.   NDA........................................................................28

B1.   Ozanne 2/18 enclosure letter (redacted)...................................32

E.    5/14 Ozanne e-mail and IOLTA statement................................34

F.    Ozanne 5/14 letter stating closing to occur 5/31/10......................36

H.    8/6 PKA demand letter (redacted)........................................37

H1.   9/8 PKA demand letter (redacted)........................................40

H2.   9/16 PKA demand letter (redacted)......................................42

EXHIBIT $A|$

Addendum to Offer

Paragraph 1 under "Closing Procedures," the second sentence ("By way of example...") is deleted and replaced with the following sentence:

1. Necessary documents shall be those documents which are reasonable and customary in transactions of this type; the required documents are set forth on Schedule 1 hereto.

In paragraph 3 under "Closing Procedures", the italicized language after the address and bank information is deleted and replaced with the following:

3. The foregoing fee is the "break up" fee. Said fee shall be non-refundable only in the event that the Seller is unable to provide the documentation listed on Schedule 1 prior to the closing, is unable to procure the required signatures to close the "life settlement" transaction, or in the event that any of the life carriers identified above contest the validity of any of the policies, and, for any of these reasons, the transaction does not close. The "break up" fee, together with interest at 6% per annum, shall be fully refundable to Seller if the life settlement transaction closes, by credit at closing, or if the transaction fails to close for any other reason, including the parties' failure to agree on the terms of the escrow and purchase agreement or Buyer's failure to perform any of its obligations hereunder. In the latter circumstances, Buyer shall pay Seller such deposited amount, or deposit the funds in an account designated by Seller, no later than the date on which closing was scheduled to occur.

*MM0 - 1/13/00*
*MS 1/13/0*

*BKO 1/13/10*

ExmpO MfIg/Trazae Cplt/Addndum to Offet  02 13 H.docx

```
┌─────────────────┐
│     EXHIBIT     │
│      A 1        │
│     ᵖ. 1        │
└─────────────────┘
```

27

## CONFIDENTIALITY, NON-DISCLOSURE AND NON-CIRCUMVENTION AGREEMENT

This Confidentiality, Non-Disclosure and Non-Circumvention Agreement ("Agreement") is entered into this 2nd day of February, 2010, by and between Matthew Stben and his affiliates ("disclosing party") and O'Malley & Associates ("receiving party") hereby agree and covenant as follows:

WHEREAS, disclosing party is providing to receiving party, the names and identifies of various private buyers and other proprietary information for the purpose of closing a life settlement transaction;

WHEREAS, in consideration of receiving party's receipt of this Confidential Information (as defined below), and by your countersignature below, receiving party hereby agrees to receive the Confidential Information (as defined below) on the following terms,

1.     For purposes of this Agreement, "Confidential Information" shall mean (i) all information disclosed in tangible form by the disclosing party as contained in the tangible materials you will receive and (ii) all information disclosed orally or otherwise in tangible form by the disclosing party relating to or referring to the identity of the disclosing party's private funders and life settlement buyers. "Confidential Information" includes, but is not limited to, the following types of information and other information of a similar nature: offers of settlement, closing documentation, identity of buyers and funders and their respective affiliates, including their life settlement representatives and attorneys of record for the life settlement transactions. "Confidential Information" shall also include any information described as proprietary or designated as confidential information by disclosing party, whether or not owned or developed by the disclosing party, and whether or not copyrighted.

2.     (a)     Each party agrees to keep in strictest confidence and not (i) use for its own purpose or other than for the sole benefit of the disclosing party; or (ii) disclose or make available to any third party the disclosing party's Confidential Information; or, (iii) use or analyze the Confidential Information for any purpose other than for evaluating the possibility of a business relationship between the parties.

(b)     Confidential Information may be disclosed only to those employees of the receiving party or advisors who (i) reasonably require access to such information for the purposes contemplated hereby, (ii) have been informed of the confidential nature of the Confidential Information, and (iii) have been directed to maintain the confidentiality of such information.

(c)     Confidential Information shall not include information which:

(i)     is legally in the possession of the receiving party or its employees prior to receipt thereof from the disclosing party; or



EXHIBIT

A 2

23

(ii)   Enters the public domain through no fault of the receiving party or its employees; or

(iii)   Is disclosed to the receiving party without restrictions or breach of any duty of confidentiality by a third party who has the right to make such disclosure; or

(iv)   Is independently developed by or for the receiving party without access to the disclosing party's Confidential Information.

(d)   In the event the receiving party is required by law or legal process to disclose any Confidential Information, the receiving party shall provide prompt notice of such to the disclosing party and reasonably cooperate with the disclosing party, at the disclosing party's request and expense, to legally prevent the required disclosure. In the event such disclosure is still required, the receiving party's compliance with the non-disclosure provisions of this Agreement, to the extent required to comply with such law or legal process, shall be waived.

(e)   At the disclosing party's request, all Confidential Information and any copies shall be returned to the disclosing party and/or the receiving party shall destroy and certify the destruction of any documents generated by the receiving party which contain the disclosing party's confidential information.

3.   No rights or obligations other than those expressly stated herein shall be implied from this Agreement. In particular, no license or other right is hereby granted, either express or implied, to the receiving party (a) with respect to the Confidential Information of the disclosing party or (b) under any patent, patent application, copyright, trademark or other proprietary right now or hereafter owned or controlled by the disclosing party.

4.   Should any provision of this Agreement be held to be illegal or unenforceable, such holding shall not affect the validity of the remainder of this Agreement.

5.   This Agreement shall be construed, governed, interpreted and applied in accordance with the laws of the State of California without regard to its conflicts of law principles.

6.   The obligations of this Agreement shall extend for a period of one (1) year from the date first above written.

2

EXHIBIT

A2

P. 2

29

7.     The receiving party hereby covenants, agrees, represents and warrants that it shall not attempt to contact the receiving party's funders, life settlement providers or life settlement purchasers without the express written consent of the disclosing party.  Any attempt to do so shall constitute a breach of this Agreement and entitle disclosing party to all damages allowed by law.

8.     In the event of a breach or threatened breach of this Agreement, the disclosing party shall be entitled to seek an injunction restraining any breach hereof. Such injunction, if granted, shall not be considered the sole remedy available for such breach and the disclosing party may seek other remedies.

9.     Arbitration. Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement, or the breach thereof, with the exception of the remedy set forth in paragraph 7 above, shall be settled by binding arbitration administered by the American Arbitration Association.  The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association offices in San Diego, California. The arbitration shall be held in San Diego, California.  The arbitration shall be held before a single arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed.  Discovery, specifically including interrogatories, production of documents and depositions shall be at the discretion of the arbitrator and to the extent permitted shall be conducted in accordance with, and governed by the Federal Rules of Civil Procedure.

A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event, shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question, would be barred by the applicable statute of limitations.

No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent of the parties hereto, containing a specific reference to this Agreement and signed by the entity sought to be joined.  Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by

3

EXHIBIT
A2
p.3
30

parties to this Agreement, shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Such arbitrator shall identify the substantially prevailing party and shall include legal fees and expenses for the substantially prevailing party.

10.    No modification or amendment to this Agreement is enforceable or allowed unless signed by both Parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives as of the date first above written.

Matthew Stoen

By:

Name: Matthew Stoen

O'Malley & Associates

By:

Name: Michael O'Malley

Title: President

4

EXHIBIT
A2
P.4

31

EXHIBIT $B1$

# DAWSON & OZANNE

### ATTORNEYS AT LAW
www.dawson-ozanne.com

3579 CALLE PALMITO, SUITE 100
CARLSBAD, CA 92009
TEL: 760-877-9552
FAX: 619-491-9205
Brendan@dawson-ozanne.com

February 18, 2010

*Via Electronic Mail Only*
Michael O'Malley
O'Malley and Associates
1901 Butterfield, Suite 500
Downers Grove, IL 60515

Re:   **Closing Procedures and Status**
       **Preserve Capital Portfolio**

Dear Mr. O'Malley,

Attached please find the following:

1. Executed Letter of Intent (note it was altered regarding the Life Expectancies to state "or" Fasano) per your request or statement that Fasano was not a Life Expectancy Provider that you have utilized;
2. Status Letter from ▆▆▆▆▆▆▆, Limited;
3. Certificate of Financial Capability-Proof of Funds from ▆▆▆▆▆▆▆ and,
4. Draft Beneficial Interest Closing Documentation.

Furthermore, please be advised that I have established four specialty IOTLA Accounts for use in this transaction, in the event I require more then I will open them at the appropriate time. Currently, there are four accounts in the name of Dawson & Ozanne, fbo, Preserve Capital I, II, III, and IV and the account numbers end 5923, 8639, 7413and 9430 respectively.



EXHIBIT

*B1*
p.1

32

Michael O'Malley
Re: Policy Offers
February 18, 2010
Page - 2 –

Please review the attached and let me know if you have any questions or concerns.

Regards,
DAWSON & OZANNE

Brendan K. Ozanne

/Attachments
cc:  Darren Niemann

EXHIBIT
B1
p. 2

33

**From:** Brendan Ozanne [mailto:brendan@dawson-ozanne.com]
**Sent:** ~~~~~~~~~~~~~~~~~~~~~~~~
**To:** Michael O'Malley
**Cc:** matthewstoen@me.com
**Subject:** Letter and IOLTA Statement

Mike,

For your review I have attached a letter from my firm, note that this is an estimate from me to you based upon all I have been told by the Bank of Utah.  Also, attached please find my IOLTA statement with approximately $876,000 remaining from due diligence funds deposited by a number of groups.

Hope this helps,

Brendan K. Ozanne
DAWSON & OZANNE
3579 Calle Palmito, Suite 100
Carlsbad, CA 92009
brendan@dawson-ozanne.com
Tel: (760) 877-9552



34

Wells Fargo StoreVision Platform



## Checking/Savings Account Detail

**Basic**

| | |
|---|---|
| Certification | IOLTA/RETA |
| | TIN on file |
| Account TIN | IOLTA (TRUST ACCT) |
| Statement/Mailing Name | DAWSON & OZANNE |
| | BRENDAN K.OZANNE    Signer |
| Additional Customers | BRIAN C DAWSON    Signer |
| Tax Responsible Customer | DAWSON & OZANNE    Sole Owner |

| | |
|---|---|
| Date Opened | 04/17/2002 |
| Status | Active - no automatic close |
| Available Balance | $876,039.99 |
| Insufficient funds/Overdraft Today | No |
| Balance Sweep | None |
| Pledges | No |
| Holds | No |
| Stop Payments | No |
| Last ACH Direct Deposit | 09/06/2005 |
| Fee Waiver | No |
| Relationship Pricing | No |
| Cost Center/AU | 730 |
| Location | 4457  WELLS FARGO PLAZA |

Page 1 of 3

EXHIBIT
E
P.2
25

EXHIBIT  F

# DAWSON & OZANNE

ATTORNEYS AT LAW
www.dawson-ozanne.com

3579 CALLE PALMITO, SUITE 100
CARLSBAD, CA 92009
TEL: 760-877-9552
FAX: 619-491-9205
Brendan@dawson-ozanne.com

May 14, 2010

*Via Electronic Mail Only*
Michael O'Malley
O'Malley and Associates
1901 Butterfield, Suite 500
Downers Grove, IL 60515

Re:     Closing Procedures and Status/POF
        Preserve Capital Portfolio

Dear Mr. O'Malley,

Attached please find a Proof of Funds for the specific purpose of purchasing the Preserve Portfolio (note that this is one investment group of many that are collectively funding a Master Trust). Please note that the closing of this transaction will occur upon the funding of the entire Master Trust. The funding of the Master Trust and the closing on the life policies held within the Preserve Portfolio shall occur on or before May 31, 2010.

Please review the attached and let me know if you have any questions or concerns.

Regards,
DAWSON & OZANNE

Brendan K. Ozanne

/Attachments



EXHIBIT
F
P. 1

36

**EXHIBIT** *H*

LAW OFFICES

# Piccione, Keeley & Associates, Ltd.

JOHN J. PICCIONE
PATRICK C. KEELEY
THOMAS A. JACKSON
———
LYNN R. CONRAD
MARK W. TADER
ALISON S. FRANKLIN
JASON SINGLETON
COURTNEY BOBOSKY
JENNIFER C. PICCIONE

COUNTY FARM PROFESSIONAL PARK
122C SOUTH COUNTY FARM ROAD
WHEATON, ILLINOIS 60187-4523

TELEPHONE: 630/653-8000
TELECOPIER: 630/653-8029
EMAIL: info@pkalaw.com
WEB SITE: http://pkalaw.com

**Via E-mail & UPS Saturday Delivery**                  August 6, 2010

Matthew Stoen,                          Matthew Stoen,
Kodiak Family, LLC Buyer's Agent        Kodiak Family, LLC Buyer's Agent
matthewstoen@me.com                     matthewstoen@me.com
Kodiak Family LLC                       c/o Brendan Ozanne
1020 Prospect St. Suite 425             3579 Calle Palmito, Suite 100
La Jolla, CA 92037                      Carlsbad, CA 92009

Brendan Ozanne
Brendan@dawson-ozanne.com
3579 Calle Palmito, Suite 100
Carlsbad, CA 92009

Re:   Offer on Life Policies dated January 12, 2010, as amended by addendum dated
      January 13, 2010 ("Offer")

Dear Brendan and Matt:

This letter constitutes the demand of O'Malley and Associates for the return of the funds held in escrow in the amount of $678,750.60 by Dawson & Ozanne pursuant to the above referenced Offer, with interest at 6% as provided therein. Please be advised that this letter is not a termination or cancellation of any transaction, specifically including the current pending transaction involving the MBM LLC Trust Agreement and related documents. My clients have been, and MBM LLC remains ready willing and able to proceed with that sale, and based on the representation of Matt Stoen and you anticipates that it will close soon. Nor does this demand constitute a waiver of any rights, claims, or defenses by any party. However, pursuant to the terms of the Offer, O'Malley and Associates is entitled to return of the funds held in escrow with interest.

As required by the Offer, O'Malley and Associates, on behalf of Preserve Capital, LLC ("Seller") provided all of the required documentation in a timely manner, with all required signatures to close the life settlement transaction, and none of the life carriers contested the validity of any of the policies. However, the transaction, through no fault of Seller's and despite Seller's compliance with all requirements, failed to close in April as originally scheduled, or at any time since. Moreover, the Buyer contemplated in the Offer, as set forth in your letter dated February 18, 2010 (and the executed letter of intent dated

EXHIBIT

H

P.1

7-1

LAW OFFICES

*Piccione Keeley & Associates, Ltd.*

Brendan Ozanne
Matthew Stoen
August 6, 2010
Page Two

February 16, 2010 from ▓▓▓▓▓▓▓ Limited) is no longer involved.  In summary, that transaction failed to close through no fault of Seller.  As set forth in the Offer:

"The "break up" fee, together with interest at 6% per annum, shall be fully refundable to Seller if the life settlement transaction closes, by credit at closing, *or if the transaction fails to close for any other reason, including the parties' failure to agree on the terms of the escrow and purchase agreement or Buyer's failure to perform any of its obligations hereunder.*  In the latter circumstances, Buyer shall pay Seller such deposited amount, or deposit the funds in an account designated by Seller, no later than the date on which closing was scheduled to occur." (emphasis added).

As you know, we are well past the date the transaction involving ▓▓▓▓▓▓ or other entities was scheduled to close.  As stated above, we continue to pursue the closing of the portfolio through your clients in an effort to mitigate damages.  However, since the original transaction no longer exists and did not close, O'Malley and Associates is entitled to return of the escrowed funds pursuant to the Offer.  Please wire the funds held in escrow ($878,760.60) plus 6% interest thereon to date, according to the wiring instructions set forth below, no later than 5 p.m. central time on Friday, August 6.

Preserve Capital
2121 W. Lunt
Chicago IL 60645

▓▓▓▓▓▓▓▓

Account name: Preserve Capital LLC

▓▓▓▓▓▓▓▓

EXHIBIT
H
P. 2

20

LAW OFFICES

*Piccione, Keeley & Associates, Ltd.*

Brendan Ozanne
Matthew Stoen
August 6, 2010
Page Three

Thank you for your attention to this matter. We look forward to receiving the additional documents for the current transaction and proceeding to a timely close.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

Patrick C. Keeley

Cc:   Michael O'Malley
Pete Hilger
Dan Phillips
Mary Alice Curran



EXHIBIT
H
P. 3

39

*Piccione, Keeley & Associates, Ltd.*

JOHN J. PICCIONE
PATRICK C. KEELEY
THOMAS A. JACKSON

LYNN R. CONRAD
MARK W. TADER
ALISON S. FRANKLIN
JASON SINGLETON

COUNTY FARM PROFESSIONAL PARK
122C SOUTH COUNTY FARM ROAD
WHEATON, ILLINOIS 60187-4523

TELEPHONE: 630/653-0000
TELECOPIER: 630/653-0029
EMAIL: info@pkalaw.com
WEB SITE: http://pkalaw.com

September 8, 2010

**Via Overnight Mail & Email:** Brendan@dawson-ozanne.com
Brendan Ozanne
**DAWSON & OZANNE**
7938 Ivanhoe Avenue, 2nd Floor
La Jolla, CA 92037

> Re: Offer on Life Policies dated January 12, 2010 as amended by Addendum dated
> January 13, 2010 ("Offer")

Dear Brendan:

On behalf of O'Malley and Associates and Preserve Capital, LLC, I am hereby renewing my clients' prior repeated demands for the immediate return of escrowed funds which you have confirmed are held in your attorney's escrow trust account in the amount of $678,750.60, plus interest at 6%, including the demand set forth in my correspondence dated August 6, 2010 (attached for your reference) which includes wire instructions.

As you know, you advised that you would provide, no later than the end of the day yesterday (Tuesday, September 7, 2010) all bases upon which you and/or your client are refusing to return the "break up" fee/escrow funds you are holding which belong to Preserve Capital, LLC/MBM Settlements, LLC as the Seller pursuant to the above-referenced Offer. In addition, you advised that Matthew Stoen was instructing you not to release the funds. Please advise in what capacity he is so instructing you, i.e., whether he is doing so individually or on behalf of a third party.

In that Offer, you identified Kodiak Family LLC as your client. Please confirm that Kodiak Family LLC continues to be your client and, additionally, please confirm whether Matthew Stoen, individually and/or as agent of Kodiak and/or ▮▮▮▮▮▮▮▮, or any other person or entity is also your client with respect to the Offer and the claim of my client for return of the funds.

Finally, please confirm that your client(s), and again, please identify which client or clients, is/are directing you to retain these funds as we are proceeding to enforce my client's rights. If there are any other attorneys involved for any of the parties associated with this transaction, please provide their names and contact information.

**EXHIBIT**
*H1*
P. 1

40

*Piccione, Keeley & Associates, Ltd.*
Brendan Ozanne
September 8, 2010
Page 2

If we do not hear from you upon receipt of this correspondence, we will assume that you are not going to respond, that you do not have any basis for retaining the escrow funds other than on the instruction of your client or clients, and further, that you represent Matthew Stoen and Kodiak Family LLC, individually and as agents for ███████████, the proposed buyer.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

Patrick C. Keeley

Enclosure
Cc:   Mike O'Malley
      Peter Hilger
      Dan Phillips
      Peter Haley, Esq.

J:\LIT\OmalleyPreserve\L\preserveozanneltr090810rev.docx;PKjc090810

EXHIBIT
H 1
P. 2

41

**EXHIBIT** H2

LAW OFFICES
**Piccione, Keeley & Associates, Ltd.**

JOHN J. PICCIONE
PATRICK C. KEELEY
THOMAS A. JACKSON

MARK W. TADER
ALISON S. FRANKLIN
JASON T. SINGLETON

122C South County Farm Road
Wheaton, Illinois 60187-4523

TELEPHONE: 630/653-8000
TELECOPIER: 630/653-8029

E-MAIL: info@pkalaw.com

LYNN R. CONRAD
CHRISTINE Mc KILLIP

September 16, 2010

<u>Via Overnight and E-mail</u>

Brendan Ozanne
Brendan@dawson-ozanne.com
7938 Ivanhoe Avenue, 2nd Floor
La Jolla, CA  92037

Re:  Offer on Life Policies dated January 12, 2010 as amended by
Addendum dated January 13, 2010 ("Offer")

Dear Brendan:

It is my understanding that my clients may have advised you that, during the pendency of settlement negotiations that you need not respond to my letter dated September 8, 2010.  As these discussions have ended, I renew the demand for the return of the escrowed funds which you have confirmed are held in your attorney's escrow trust account in the amount of $678,750.60, plus 6% interest, to be wired to my clients immediately pursuant to wire instructions set forth in my correspondence of August 6, 2010 and ask that you respond to the issues raised in my September 8, 2010 correspondence.

Please provide any basis you contend exists for you not to return the escrowed funds.  Additionally, please confirm whether Matthew Stoen, individually and/or as agent of Kodiak Family LLC and/or Emerald Isle LSF continues to be your client with respect to the Offer and the claim of my clients for return of the funds, and, if you contend that your client is directing you to retain the funds, identify which client/clients is/are directing you to retain these funds and whether the client is so directing you individually or on behalf of a third party.

Finally, please advise whether you contend the Offer is confidential, and if so, the basis for that contention.

If I do not receive an answer from you by 5 p.m. central time on Friday, September 17, 2010, I will assume that you are not going to respond, and that

EXHIBIT
H 2
P. 1

42

the following statements are true:  that you do not have any basis for retaining the escrowed funds other than the instruction of your client or clients; that Matthew Stoen and Kodiak Family LLC are your clients and further that each of them, individually and as agent for ~~█████████~~ is instructing you to retain the funds; and that you do not contend the offer is confidential.

Very truly yours,

PICCIONE, KEELEY & ASSOCIATES, LTD.

*Patrick C. Keeley*

PCKASF:chm/1\LIT\OcmaBayPreserve\1\preservecolts0831320.docx

EXHIBIT

H 2

P. 2

43

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

**I. (a) PLAINTIFFS**
O'M and Associates, LLC; Preserve Capital, LLC; MBM Settlements, LLC

**DEFENDANTS**
Brendan K. Ozanne, Brian C. Dawson, and Dawson & Ozanne; Matthew Stoen, et al.

**(b)** County of Residence of First Listed Plaintiff   DuPage (Illinois)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego (California)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

2010 OCT 13  PM 2:59

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
see attached addendum

Attorneys (If Known)
not known

**'10 CV 2130 H      RBB**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 | |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sec. 1332(a)(1) (diversity); 28 U.S.C. Sec. 1391 (venue)
Brief description of cause:
Breach of Contract, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, Declaratory Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
10/13/2010

SIGNATURE OF ATTORNEY OF RECORD
_J. Scott Mills_

FOR OFFICE USE ONLY

RECEIPT #  19035      AMOUNT  $350      APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

TB 10-13-10

# ADDENDUM TO CIVIL COVER SHEET

I. (c) **Attorneys for Plaintiffs**:

PICCIONE, KEELEY & ASSOCIATES, LTD.
Patrick C. Keeley (*Pro Hac Vice*)
 *pkeeley@pkalaw.com*
122C South County Farm Road
Wheaton, Illinois 60187
Telephone: (630) 653-8000
Facsimile: (630) 653-8029

NIELSEN, HALEY & ABBOTT LLP
Peter C. Haley, SBN 41724
 *phaley@nielsenhaley.com*
J. Scott Miller, SBN 256476
 *smiller@nielsenhaley.com*
44 Montgomery Street, Suite 750
San Francisco, California 94104
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS019035
Cashier ID: mbain
Transaction Date: 10/13/2010
Payer Name: PICCIONE KEELEY AND ASSOC
--------------------------------
CIVIL FILING FEE
  For: OM AND ASSOC V OZANNE
  Case/Party: D-CAS-3-10-CV-002130-001
  Amount:        $350.00
--------------------------------
CHECK
  Check/Money Order Num: 82383
  Amt Tendered: $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```