# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O'M AND ASSOCIATES, LLC, an Illinois limited liability company, d/b/a O'Malley and Associates; PRESERVE CAPITAL, LLC, an Illinois limited liability company; and MBM SETTLEMENTS, LLC, an Illinois limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>BRENDAN K. OZANNE, BRIAN C. DAWSON, AND DAWSON & OZANNE, a California general partnership, as escrow agent; MATTHEW STOEN, individually and as manager and agent for KODIAK FAMILY, LLC, a Nevada limited liability company; KODIAK FAMILY, LLC, individually and as agent for XYZ CORPORATION,<br><br>Defendants. | CASE NO. 10-CV-2130 H (RBB)<br><br>**MEMORANDUM DECISION GRANTING LIMITED TEMPORARY RESTRAINING ORDER** |

On October 13, 2010, Plaintiffs concurrently filed their complaint and a motion for temporary restraining order ("TRO"). (Doc. Nos. 1 & 4.) On October 14, 2010, the Court set a briefing schedule for the parties and a hearing date on the motion. (Doc. No. 6.) On October 20, 2010, Defendants filed their response in opposition to the TRO. (Doc. No. 16.) The Court held a hearing on this motion on October 22, 2010. Patrick Keeley appeared telephonically and Peter Haley appeared in person on behalf of Plaintiffs. David Veljovich specially

appeared on behalf of Defendant Brendan K. Ozanne.  After the hearing, the Court ordered supplemental briefing. (Doc. No. 22.)  On October 27, 2010, Defendant Brendan K. Ozanne filed his supplemental brief.  (Doc. No. 23.)  On October 29, 2010, Plaintiffs filed their supplemental brief. (Doc. No. 24.)  On November 2, 2010, the Court held another hearing on the motion.  Patrick Keeley appeared in person and Scott Miller appeared telephonically on behalf of Plaintiffs.  David Veljovich specially appeared on behalf of Defendant Brendan K. Ozanne.  After due consideration, the Court grants a limited temporary restraining order.

## Background

This action centers around a failed sale of life insurance policies  (Compl. ¶ 1.) Plaintiffs are the sellers of the life insurance policies, with Plaintiff Matthew O'Malley acting as the seller's agent ("O'Malley").  (Id. ¶ 11.)  Defendant Matt Stoen was the buyer's agent and manager for Defendant Kodiak Family, LLC ("Kodiak").  (Id. ¶ 7.)  Kodiak in turn was the agent for the real buyer of the policies, XYZ Corporation ("XYZ").  (Id. ¶ 16.)  Defendant Brendan Ozanne ("Ozanne") represented Kodiak and is alleged by Plaintiffs to be the escrow agent for the sale.  (Id. ¶¶ 5, 15.)  Ozanne is a partner for the general partnership Dawson and Ozanne.  (Id. ¶ 6.)

Ozanne presented Plaintiffs with an offer to buy the life insurance polices on January 12, 2010, and O'Malley accepted the offer the following day. (Compl. ¶¶ 18-19.)   The sale agreement called for the seller to deposit 3% of the purchase price of the policies in Dawson and Ozanne's Attorney Client Trust Account ("IOLTA").  (Compl. ¶ 22).  Pursuant to the agreement, Plaintiffs transferred monies to the IOLTA account through fours separate transactions. (Id. ¶¶ 22, 23, 27.)  Pursuant to an addendum to the sales agreement, Plaintiffs claim that this fee is a "break up" fee  and is only non-refundable to them if the transaction does not close under one of three conditions:  (1) if the seller is unable to provide required documentation prior to closing, (2) if the seller is unable to procure the signatures required to close the transaction, or (3) if the life insurance carriers contest the validity of any the policies. (Id. Ex. A1.)   On the other hand, Defendants claim that the fees are for performing due diligence and no escrow instructions were ever completed.  (Id.  ¶ 24.)

The sales transaction did not close on May 31, 2010. (Compl. ¶ 37.) In mid-July, 2010, Ozanne provided Plaintiffs with a new buyer for the life insurance policies. (Id. ¶ 38.) No closing has occurred with a new buyer. (Id. ¶ 39.) Starting August 2010, Plaintiffs, through counsel, sent written demands to Defendants asking for return of their funds. No money has been returned to them to date. (Id. ¶ 40-45.)

## Discussion

### I.    TRO – Legal Standard

A temporary restraining order is generally reserved for an emergency circumstance where the rights of a party are in urgent need of protection. See Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 438-39 (1974). Apart from showing the necessity for immediate relief, applicants for a TRO must meet the same standards as for a preliminary injunction. See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Marlyn Nutraceuticals, Inc, v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009). Alternatively, a plaintiff may be entitled to a preliminary injunction by establishing "the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998); see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839-94 (9th Cir. 2001). These alternative formulations "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Roe v. Anderson, 134 F.3d at 1402; see Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). Thus, if "the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits." State of Alaska ex rel. Yukon Flats School Dist. v. Native Village of Venetie, 856 F.2d 1384, 1389 (9th Cir. 1988).

///

## II.   Likelihood of Success on the Merits / Serious Question Going to the Merits

The claims supporting the application for a temporary restraining order primarily center around breach of contract and breach of fiduciary duty relating to the funds that Plaintiffs deposited into Defendant Ozanne's IOLTA account. Plaintiffs and Defendants dispute the merits of these claims.

The original offer agreement stated that the seller or seller's agent was to deposit 3% of the purchase price upon acceptance of the offer and that:

> "This fee is a 'break up' fee for my clients and my firm. Said fee shall be <u>non-refundable</u> in the event that the Seller is unable to provide the appropriate supporting documentation and unable to procure the necessary signatures for a successful 'life settlement' transaction. It shall further be deemed <u>non-refundable</u> in the event that any of the life carriers identified above contest the validity of any of the policies listed above for any reason.
>
> However, in the event the Buyer fails to perform their obligations, set forth below, this fee is refundable in its entirety, together with an interest rate of 6% per annum. Further, Kodiak Family, LLC agrees to refund this amount, via a credit in the full amount of the 'break up' fee at the time of the closing of the life settlement transactions as referenced above. Please be advised that Dawson & Ozanne, other than its role as Escrow Agent, is not responsible for the refund of such fees and this duty and responsibility shall be borne solely by Kodiak Family, LLC or its affiliates. Further, Dawson & Ozanne is informing Seller and Seller's Agent that it is not representing in any legal capacity, the rights of Seller or Seller's Agents and in no instance shall such entities or individuals by considered or deemed clients of Dawson & Ozanne."

(Compl. Ex. A.)  This portion was then replaced by an addendum which stated:

> "The foregoing fee is the 'break up' fee. Said fee shall be non-refundable only in the event that the Seller is unable to provide the documentation listed on Schedule 1 prior to closing, is unable to procure the required signatures to close the 'life settlement' transaction, or in the event that any of the life carriers identified above contest the validity of any of the policies, and, for any of these reasons, the transaction does not close. The 'break up' fee, together with the interest at 6% per annum, shall be fully refundable to Seller if the life settlement transaction closes, by credit at closing, or if the transaction fails to close for any other reason, including the parties' failure to agree on the terms of the escrow and purchase agreement or Buyer's failure to perform any of its obligations hereunder. In the latter circumstances, Buyer shall pay Seller such deposited amount, or deposit the funds in an account designated by Seller, no later than the date on which closing was scheduled to occur."

(<u>Id.</u> Ex. A1.)

Parties first dispute whether the funds Plaintiff deposited was to be held in escrow for the benefit of the Plaintiffs. Plaintiffs contend that the monies that they deposited in Defendant Dawson & Ozanne's IOLTA account was to be held in escrow and refunded back to

them—pursuant to the addendum to the offer—at an interest rate of 6%. (Compl. ¶ 25.) The language of the addendum refers to this fee as a "break up" fee. On its face, it does not state that the money may be used for due diligence or may be disbursed for other reasons to the client. The changed language between the original agreement and addendum remove the statements limiting the liability of Ozanne or Dawson & Ozanne with regards to the fee. Furthermore, Defendant Ozanne signed the agreement and addendum as the "escrow agent" on this transaction.

Defendant Ozanne contends that these funds were for the buyer to use for performing due diligence on the life insurance policies to ensure they were marketable and that the transaction was otherwise valid. (Doc. No. 16, Declaration of Brendan Ozanne, ¶¶ 4-6.) Ozanne contends that because these are due diligence fees and not a security deposit, these funds were disbursed to Kodiak, the buyer's agent, and the buyer to perform the due diligence. (Id. ¶ 7.) Ozanne contends that he never had a duty to hold the money in the IOLTA account for safekeeping. (Id.) The language of the addendum does not specifically spell out duties and responsibilities of the escrow agent, which are typical in an escrow agreement. Defendant Ozanne testified that he did not believe he was acting as an escrow agent with respect to the "break up" fee. (Doc. No. 23, Ex. 1.) Additionally, he has referred to the fee in contemporaneous emails to Plaintiffs as due diligence funds. (Compl. Exh. E.)

The parties also dispute whether the fees that Plaintiffs paid are refundable at all under the addendum. Plaintiffs contend that they were ready to close and that the Bank of Utah, as trustee for the buyer, verified that the life insurance polices met the purchase criteria. (Compl. ¶ 32-33; Doc. No. 4, Affidavit of Michael O'Malley, ¶ 32-40.) Defendant Ozanne contends the money should not be refunded pursuant to the addendum because Plaintiffs failed to provide the required signatures. (Doc. No. 23 at 2-3.; Doc. No. 23, Ex. 3.)

The changed language between the original agreement and the addendum specifically state the fee is fully refundable, except in three limited situations. Plaintiffs presented evidence that they believed all the documents they provided complied with the requirements and reason the transaction did not close did not fall within any of the three situations. Furthermore,

1  Defendants represented on various occasions that they were satisfied with the documents. (See
2  Doc. No. 30, Affidavit of Michael O'Malley.) Defendants do present testimony, however,
3  from the "manager" of the buyer's trust, Richard Baker, that Plaintiffs failed to provide all
4  required signatures on disclosures, warranties, and transfer documents. (Doc. No. 23, Ex. 3
5  ¶ 13.) According to Baker, because the required documents were not deposited into the
6  document depository, the buyer could not finish performing its due diligence and close the
7  transaction. (Id.)

8  The addendum to the sales agreement referred to the funds Plaintiffs deposited as the
9  break up fee. Ozanne acted as the escrow agent by signing the agreement and addendum as
10 the escrow agent. The break up fee was sent to him through his IOLTA account. On May 14,
11 2010—days before closing—Ozanne sent an email to Plaintiff O'Malley stating that there was
12 $876,000 in his IOLTA account. (Compl., Exh. E.) This email was sent in response to a
13 request by O'Malley to confirm that money was set aside for the transaction and that the due
14 diligence was complete and documents accepted. (Doc. No. 30, Affidavit of Michael
15 O'Malley.) The same email did not mention any deficiencies in the due diligence but did set
16 closing for two weeks later on May 31, 2010. After that email correspondence, Plaintiffs
17 continued to receive reassurances from Defendants that closing was moving forward as
18 planned. (Id.) Plaintiffs did not receive any indication from Defendants that they needed to
19 provide more signatures in order to close the transaction. The Court concludes based on the
20 totality of the evidence that Plaintiffs have raised serious questions going to the merits of the
21 claims. The Court is not prepared at this time to conclude that Plaintiffs are likely to succeed
22 on the merits. Accordingly, the Court turns to the Ninth Circuit's alternative formulation for
23 granting a TRO and next addresses the balance of hardships.

24 **III.   Balance of Hardships**

25 Under Ninth Circuit law's alternative formulation for granting a TRO, a court closely
26 considers the balance of hardships with whether there are serious questions going to the merits.
27 See Roe v. Anderson, 134 F.3d at 1042. Both parties dispute whether the money deposited
28 into the IOLTA account were due diligence funds to be disbursed and spent or a break up fee

in escrow to be held until such time as the transaction closed or not.

Defendant Ozanne has testified that he has disbursed all funds that Plaintiffs deposited into his IOLTA account to Kodiak for payment of due diligence expenses. (Doc. No. 23, Ex. 1 ¶ 9.) He also submitted a declaration stating that he is not holding any such funds in his IOLTA account or in any other account controlled by himself or Dawson & Ozanne. (Id.) Defendant Stoen has also testified that all the money that he received from his attorneys has been spent and paid to individuals who have performed due diligence activities for the transaction. (Doc. No. 23, Ex. 2 ¶ 10.) Stoen and Kodiak claim that they are not holding any such funds in any of their accounts. (Id.) If Defendants are no longer holding any such funds because the money has been transferred or spent, a limited temporary restraining order only enjoining any such remaining funds that can be identified will not present a hardship to them.

On the other hand, if there are any funds that do still exist and can be identified, freezing such funds may be Plaintiffs' only opportunity to recover any of their funds. Plaintiffs presented evidence that Defendant Stoen is currently involved in six lawsuits, including pending suits as well as judgments against him. (Doc. No. 26, Affidavit of Alison S. Franklin ¶ 5.) Freezing any identifiable and traceable funds may allow Plaintiffs to claim their money before it is made available to pay for any other judgments against Defendants.

Accordingly, the Court concludes that the balance of hardships tips toward Plaintiffs in granting this limited temporary restraining order.

**IV.   Irreparable Harm**

The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies. Sampson v. Murray, 415 U.S. 61, 88 (1974). Generally, an injury that could be remedied through money damages is not irreparable. Id. at 90 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Plaintiffs have shown that they may not have an adequate remedy at law as to the break up fee. Plaintiffs presented evidence that Defendant Stoen is involved in six lawsuits involving a variety of causes of action, including breach of contract, breach of duties owed, fraud, and

1 conspiracy. ((Doc. No. 26, Affidavit of Alison S. Franklin ¶ 5.)  In one of the cases, a judgment of over $300,000 has already been entered against Defendant Stoen.  (Id.)  If accounts that may still have funds that Plaintiffs deposited are not frozen, Plaintiffs may not be unable to receive damages even if they eventually prevail on the merits in light of the other legal actions against Defendants.  Thus, the Court concludes Plaintiffs have shown they will suffer irreparable injury absent a grant of this limited TRO.

**V.    Consideration of the Public Interest**

Plaintiffs have shown that they may suffer irreparable harm absent a limited TRO. Defendants on the other hand will not suffer additional hardship if the money has already been spent.  Because this action arises from a failed business transaction, no other public interests are particularly strong.

**Conclusion**

After due consideration, the Court GRANTS a limited temporary restraining order.  The Court orders as follows:

(1)   Brendan Ozanne and Dawson & Ozanne and its principals, including but not limited to Matthew Stoen, individually and as agent of Kodiak Family, LLC, are enjoined and restrained from directly or indirectly transferring the Deposited Funds plus any interest earned thereon, or any portion thereof, from any account over which any of Defendants have ownership, possession, or control and into which the Deposited Funds have been identifiably transferred;

(2)   Ozanne, Dawson & Ozanne, Stoen and Kodiak are to provide, within 10 days from the effective date of this order, all relevant information regarding all accounts to which the Deposited Funds were transferred and are now held, including but not limited to: the location and identity of the transferee account, the date on which the funds were transferred, the accounts to which they were transferred, the reason for the transfer, and the identities of all signatories to the account to which the funds were transferred;

(3)   Discovery may commence in this matter immediately and be expedited as to accounting and issues raised in the application for the temporary restraining order;

1 (4) The Court orders a bond of $7,500 as a condition to this order;

2 (5) The Court also orders, effective immediately, the parties to preserve evidence;

3 (6) The Court reserves the right to modify or dissolve this order at any time.

**IT IS SO ORDERED.**

DATED: November 2, 2010

*/s/ Marilyn L. Huff*

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT