Patrick C. Keeley (*Pro Hac Vice*)
**PICCIONE, KEELEY & ASSOCIATES, LTD.**
**122C South County Farm Road**
**Wheaton, Illinois 60187**
**Telephone: (630) 653-8000**
**Facsimile: (630) 653-8029**

Peter C. Haley, SBN 41724
**NIELSEN, HALEY & ABBOTT LLP**
**44 Montgomery Street, Suite 750**
**San Francisco, California 94104**
**Telephone: (415) 693-0900**
**Facsimile: (415) 693-9674**

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O'M AND ASSOCIATES, LLC, an Illinois limited liability company, d/b/a O'Malley and Associates; PRESERVE CAPITAL, LLC, an Illinois limited liability company; and MBM SETTLEMENTS, LLC, an Illinois limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> BRENDAN K. OZANNE, BRIAN C. DAWSON, AND DAWSON & OZANNE, a California general partnership, as escrow agent; MATTHEW STOEN, individually and as manager and agent for KODIAK FAMILY, LLC, a Nevada limited liability company; and KODIAK FAMILY, LLC individually and as agent for EMERALD ISLE LSF LIMITED; BANK OF UTAH, Individually and as trustee of the EMERALD ISLE LSF TRUST <br><br> Defendants. | CASE NO.: 3:10-CV-02130 AJB-RBB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KODIAK FAMILY LLC'S MOTION TO QUASH SERVICE AND DISMISS OR, IN THE ALTERNATIVE, TO SET ASIDE DEFAULT JUDGMENT** <br><br> **Date:    May 23, 2011** <br> **Time:    9:00 a.m.** <br> **Courtroom  12** <br><br> **Hon. Anthony J. Battaglia** |

## **INTRODUCTION**

It is undisputed that Matthew Stoen was served with process, via service on David Veljovich, on October 20, 2010, and that proof of service on that basis was filed herein (doc. 21-1 ).  As set forth below, Veljovich unequivocally represented to Judge Huff  and Plaintiffs in the initial TRO hearing that he was authorized to accept service on behalf  of Kodiak.  (The relevant pages of the transcript from that hearing are attached hereto as **Exhibit 1**).  It is also undisputed that Stoen was a managing agent of Kodiak Family, LLC at that time, that the summons and complaint was left on the doorstep of  Stoen's residence when the dog sitter refused to accept the documents on October 14, 2010 (Doc. 11), that Plaintiffs' local counsel mailed the summons and complaint to Stoen as agent of Kodiak on October 15, 2010 (Id.)  and that Kodiak has had actual notice of the lawsuit against Kodiak since October 19, 2010 when Stoen e-mailed attorney David Veljovich regarding the lawsuit.[1]  Kodiak has also had notice of the damages sought both in the Complaint and in the Plaintiffs Motion for Default Judgment, with which Stoen was served in late December, including the affidavit outlining damages.  After Stoen received the motion and affidavit, Stoen filed a Motion to Vacate Default on January 6, 2010, and participated through counsel in the January 24, 2010 hearing on Plaintiffs' Motion for Default Judgment against him and Kodiak.  Kodiak offers no legally cognizable reason for failing to act on behalf of Kodiak at

---

[1]   Because none of the Defendants have produced an operating agreement for Kodiak or any other document showing its membership, despite discovery requests served by Plaintiffs in November, 2010, Plaintiffs have been unable to determine whether there are other members of Kodiak; Stoen in his declaration concludes that there are but fails to identify them and fails to provide supporting documentation.  Plaintiffs have alleged the only information available from public records.  At depositions last week, Stoen and Ozanne testified that Ozanne, for whom Veljovich appeared and answered, was *an economic interest holder* (not a member) of Kodiak. Ozanne also was notified of the lawsuit against Kodiak when he was served in October. Finally, Stoen, the managing member of Kodiak, admits that he has had actual notice of this lawsuit since October 19, 2010.

No. 3:10-CV-02130

1
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

the time its managing member moved to vacate and waited until late April, 2011, six months after the Complaint was filed and three months after the default judgment was entered against Kodiak. Kodiak fails to offer any facts which support either quashing service of summons or vacating the judgment under the legal standards required to do so.  Kodiak has not and cannot, as recognized by Judge Huff in her order granting judgment against Kodiak, demonstrate excusable neglect. Nor has Kodiak articulated any fraud which would support setting aside the judgment, let alone established it by clear and convincing evidence, or circumstances which would fall into the "catchall" category of  Rule 60(b).  Rather, Kodiak's conduct herein is culpable and inexcusable conduct which dictates that the judgment against it remain in place.   The audacity to claim no service despite unequivocal representations by counsel to this Court and Plaintiffs is simply appalling.

Additionally, the declaration filed by Matthew Stoen in support of  Kodiak's Motion fails to meet evidentiary standards required by federal courts in this district, including statements based upon "information and belief," conclusions rather than facts, testimony without foundation, statements which are baldly false based on the record already before the Court (including Stoen's own e-mail), and pure speculation.  In order for a declaration to be probative, the person signing the statement must have personal knowledge of facts contained in the declaration.  Declarations are also properly stricken if they contain speculative or other improper testimony, particularly when contradicted by an affidavit which contains factual information based upon personal knowledge. ***Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc***., 627 F.2d 919 (9th Cir. 1980); ***FTC v. H.N. Singer, Inc***., 1982 WL 1902 (N.D. Cal. 1982) (striking a declaration "pervaded by hearsay" and contradictions of previous admissions); ***Digital Control Incorporated v.***

No. 3:10-CV-02130

2
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

*McLaughlin Mfg. Co., Inc.*, 242 F. Supp.2d 1000 (W.D.Wash. 2002) (striking an affidavit that was unsupported and contradicted by other evidence). *See also, Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc., 944 F.2d 1525, 1529* (9th Cir.1991) (rejecting an affidavit because it was "not based on personal knowledge, but on information and belief"). Plaintiffs pleaded in the Complaint and in their Motion for Temporary Restraining Order, supported by the Affidavit of Michael O'Malley (doc. 4-3) that the Defendants, including Stoen, were told that the policies subject to the transaction were subject to loans in December 2009. In fact, Stoen wrote an e-mail correspondence on January 27, 2010, stating that he was aware the policies were financed through credit unions (explicitly contradicting his Declaration). Stoen's e-mail correspondence is attached to the Affidavit of Michael O'Malley filed in support of Plaintiffs' Motion for Temporary Restraining Order as Exhibit N. In addition, despite Stoen's implication in his declaration, the credit financing did not deter the Defendants from adding policies to those covered by the Escrow Agreement, as set forth in the February 11, 2011 letter.

The facts pleaded in Plaintiffs' Complaint, their Motion for Temporary Restraining Order, the Affidavit of Michael O'Malley filed in support thereof (doc 4-3, Exhibit N), the affidavit of Michael O'Malley filed herewith (**Exhibit 2**), along with deposition excerpts (**Exhibit 3**), refute the allegations of Stoen's declaration, which should be stricken.

## **FACTS**

Kodiak's distortion of the facts is not relevant to the instant motion and is a spurious attempt to bias the court with misrepresentations which cannot be left unanswered. Plaintiffs

No. 3:10-CV-02130
3
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

filed the Complaint and Motion for TRO on October 13, 2010.  On October 14, 2010, a process server for Ace Attorney Service, Inc., attempted to serve Stoen, first at the last known address for Kodiak, then at his last-known home address.[2]  The process server was advised that Kodiak no longer had an office at the business address, and was advised by the dog sitter at Stoen's home that Stoen was out of town.   The process server returned later the afternoon to leave the summons and Complaint with the dog sitter; however, the dog sitter refused to accept service.  Thereafter, the dog sitter placed the documents on the doorstep.  See, Declaration re: Attempted Service on Defendants (i) Stoen, individually; (ii)  Stoen as manager and agent for Kodiak Family, LLC;  (iii) Kodiak Family, LLC, individually; and (iv) Kodiak Family, LLC as agent for XYZ Corporation (Emerald Isle LSF Limited) (doc. 11).     Thereafter, on October 15, 2010, pursuant to Federal Rule of Civil Procedure 4(d),  attorney J. Scott Miller mailed the summons and complaint and two copies of an acknowledgment to the defendants at their last known addresses.  (*Id.,* Declaration of J. Scott Miller, para. 7) [3]

On October 19,  2010, Patrick Keeley, Plaintiffs' attorney, received an e-mail from Stoen representing that Veljovich was authorized to accept service on his behalf.  Plaintiffs immediately arranged for the process server to personally serve all documents on Stoen, individually and in his capacities as agent of Kodiak, and on Kodiak, individually and as agent of Emerald Isle.

---

[2] Stoen acknowledges that Kodiak was defunct at the time Plaintiffs attempted to serve process; moreover, its registered agent had resigned.  While Stoen testifies that there are four members of Kodiak Family, LLC, the names of those members are not of record.  Even now, in his Declaration, Stoen failed to list them, and all Defendants have failed to produce an operating agreement despite discovery requests served on Stoen in November, forwarded to his counsel in January.

[3] Plaintiffs spent several thousand dollars attempting to serve Stoen before Veljovich accepted service on behalf of the defendants.  Pursuant to Federal Rule of Civil Procedure 4(d)(2), Plaintiffs at a minimum are entitled to recover costs attributable to Kodiak from Kodiak.

---

No. 3:10-CV-02130

4

Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

(Doc. 21-1, pages 1-20).  Veljovich accepted all documents except for those served on him for Kodiak in its capacity as agent for XYZ Corporation.  Id.  Moreover, Veljovich acknowledged and represented on the record at the TRO hearing on October 22, 2010, that Kodiak *had* been served and that he (Veljovich) *was* authorized to accept service on behalf of <u>all</u> defendants except for Brian Dawson and Kodiak in its capacity as agent for the undisclosed buyer:

> "Mr. Veljovich:  Yes, I – your Honor, I was authorized to accept service on behalf of all of the Defendants except for Brian Dawson.  I believe Brian Dawson was personally service.
>
> The Court:  Okay.
>
> Mr. Veljovich:  So I think that all of the Defendants except for I believe XYZ Corporation as fictitious name in the complaint due to the documents under seal.  I did not have any authority to accept on behalf of that company, and a process server attempted to serve me on behalf of Kodiak Family, LLC *as agent for that entity, XYZ Corporation, and I indicated I did not have any authority to accept in that capacity*.  **But Kodiak Family, LLC has been served**.

Transcript of October 22, 2010 hearing, pp. 2-3 (Emphasis added).

 Despite service, knowledge of the pending litigation, and participation in the litigation, neither Stoen nor Kodiak appeared or defended the lawsuit.  Plaintiffs then filed a Motion for Default Judgment, supported by the Affidavit of Pam Szekely outlining all damages sought by the Plaintiffs against Defendants Stoen and Kodiak.  The Motion, including the affidavit, was served on Stoen and Kodiak in mid-December, 2010, by e-mail, regular mail and certified mail to the last known addresses for Stoen and Kodiak.  (Certificate of Service, doc. 70, filed December 27, 2010).

Thereafter, Mr. Stoen appeared (within the 120 day period in which Plaintiff has to serve the Complaint) and on January 6, 2011 moved to vacate the default entered against him

5
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

individually.  No pleading was filed on behalf of Kodiak.  Therefore, it is also undisputed that Stoen, Kodiak's managing member, had notice of the January 24, 2011 hearing on Plaintiffs' Motion for Default Judgment against Stoen and Kodiak, as well as the damages sought therein and intentionally failed to move on Kodiak's behalf.   Judge Huff granted Defendant Stoen's Motion to Vacate the default and declined to enter default judgment against Stoen individually. In granting Plaintiffs' Motion for Default Judgment against Kodiak, Judge Huff  specifically found that there could be no suggestion that Kodiak's default was due to excusable neglect, since Stoen, its agent, had appeared and was defending:

> "Additionally, there is no evidence to suggest that Defendant Kodiak's default was due to excusable neglect and Defendant has failed to make any effort to show excusable neglect. To the contrary, Stoen's appearance in the action suggests that Kodiak should be aware of the litigation because Stoen is Kodiak's agent. Finally, although the Court recognizes the strong policy favoring resolution of cases on their merits, proceeding with the instant litigation against Defendant Kodiak would be futile given Defendant's failure to appear."

(Doc. 100, p. 5)

## BACKGROUND

This lawsuit is not merely based upon an alleged breach of an oral agreement (to provide services) by Kodiak, but upon Kodiak's receipt, as agent of an undisclosed principal, escrowed funds which it had a contractual obligation to return, as well as other claims related to Kodiak's failures and breaches of duty in connection with the failed sale of life insurance policies offered by Plaintiffs for sale pursuant to an offer from Defendant Brendan Ozanne on behalf of  Kodiak. (The proposed sale as more fully alleged in the Complaint is hereinafter the "Transaction.") Pursuant to a written Escrow Agreement with Ozanne as escrow agent, signed by Matthew Stoen as agent for Kodiak, Plaintiffs deposited nearly Seven Hundred Thousand Dollars in Ozanne's IOLTA account.  The funds were non-refundable to Plaintiffs only if the Transaction failed to

No. 3:10-CV-02130

6

Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

close for one of three specific reasons, none of which occurred.  When the Transaction failed to close and the Plaintiffs demanded return of their escrowed funds, Defendants refused to return the funds.  In addition to alleging breach of the Escrow Agreement, and conversion and unjust enrichment with respect to the escrowed funds, Plaintiffs allege millions of dollars in damages from the failed sale, resulting from, among other claims, breach of an oral agreement by Defendants Stoen and Kodiak, and negligent interference with prospective economic advantage by Defendants Stoen and Kodiak.  Plaintiffs also sought Declaratory and Injunctive relief. On November, 2, 2010, the Court granted a Temporary Restraining Order (Doc. 37).  In that Order, the Court found:

> "The addendum to the sales agreement referred to the funds Plaintiffs deposited as the break up fee.  Ozanne acted as the escrow agent by signing the agreement and addendum as the escrow agent.  The break up fee was sent to him through his IOLTA account.  On May 14, 2010 – days before closing – Ozanne sent an email to Plaintiff O'Malley stating that there was $876,000 in his IOLTA account (Compl. Exh. E)  This email was sent in response to a request by O'Malley to confirm that money was set aside for the transaction and that the due diligence was complete and documents accepted. (Doc. No. 30, Affidavit of Michael J. O'Malley)  The same email did not mention any deficiencies in the due diligence but did set closing for two weeks later on May 31, 2010.  After that email correspondence, Plaintiffs continued to receive reassurances from Defendants that closing was moving forward as planned. (Id.)  Plaintiffs did not receive any indication from Defendants that they needed to provide more signatures in order to close the transaction.  The Court concludes based on the totality of the evidence that Plaintiffs have raised serious questions going to the merits of the claims…."

(Doc. 37, p. 6).

## ARGUMENT

**I.**     **Service On Kodiak Was Proper.**

Under Ninth Circuit law, "' the filing of a proof of service creates a rebuttable presumption that … service was proper.'"  ***Tejada v. Sugar Foods Corp***., 2010 WL 4256242,

No. 3:10-CV-02130
7
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

p. 3 (C.D. Cal. 2010)(citation omitted).  Moreover, "'under Ninth Circuit law, the prima facie case [of valid service] 'may be overcome only by strong and convincing evidence.'" ***Id.*** (citation omitted).  Here, Kodiak has failed to rebut that presumption.  Stoen only states in his declaration the bald conclusion that "Kodiak did not and still does not believe that it was served with the Summons and Complaint in this case."  (Doc. 138-1).  This statement regarding Kodiak's subjective belief, in light of specific evidence to the contrary, is not evidence, and Veljovich's testimony that he was not authorized to accept service months <u>after the fact</u>, which is directly contrary to his representations to the Court in a hearing two days after he accepted service, should not be credited but rather sanctions should result.   Moreover, none of Stoen's actions indicate that any belief by Kodiak that it was not served.[4]  Rather, Stoen states that Kodiak could not afford an attorney.  At no time, however, did Kodiak request time to obtain an attorney or otherwise take any action to participate in the case.

Here, Plaintiffs complied with the requirements of Federal Rule of Civil Procedure 4(h).  Federal Rule of Civil Procedure 4 provides:

> "Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; *or*
>
> (B) by delivering a copy of the summons and of the complaint to an officer, *a managing or general agent*, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute

---

[4] It is curious to note that Kodiak as an entity can only have a "belief" through its agents and no person is identified by Stoen as an agent with such belief.

Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

and the statute so requires — by also mailing a copy of each to the defendant; …"

Federal Rule of Civil Procedure 4(h)(emphasis added).

Thus it is clear that a plaintiff may serve a Complaint by either serving an officer or managing agent of an entity *or* by serving process as required by state law:

> One way a corporation may be served is "by *delivering* a copy of the summons and of the complaint to an officer, a managing or general agent, *or* any other agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(h)(1)(B) (emphasis added). *Alternatively,* a plaintiff may serve process by following the law of the state where the district court is located or of the state where service is effected. *See* Fed.R.Civ.P. 4( h)(1)(A) (referring to Rule 4(e)(1), which provides for service pursuant to state law).

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2009 WL 4874872 (N.D. Cal. 2009)(Emphasis added).

Here, Plaintiffs served the Complaint on Stoen as a managing agent for Kodiak.  Stoen has not and cannot dispute that he is a managing agent for Kodiak.  Stoen himself testified in a declaration filed on October 27, 2010 that he was a managing member of Kodiak (Doc 23- 2). Plaintiffs have alleged in the Complaint and in multiple affidavits filed herein that Stoen was the only employee or agent of Kodiak with whom any of them ever dealt. (Affidavit of Michael O'Malley, doc. 86-3, para. 12)  As alleged in the Complaint, Stoen signed the Escrow Agreement for Kodiak, as the agent for the undisclosed buyer.  Under the Rule, service is proper on an individual who is "'so integrated with the organization that he will know what to do with the papers.'"  See, *Bender v. Intersil Corporation*, 2009 WL 2969462,  at 2 (N.D. Cal. 2009). Here, Stoen was clearly such a person.[5]

---

[5] Stoen waived any argument with respect to personal jurisdiction and service when he appeared and filed his Motion to Vacate.  This principle should extend to waiver by Kodiak since Stoen

9
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

None of the cases cited by Kodiak with respect to service are applicable or relevant here, where there was a meeting of the minds between Plaintiffs' counsel and Veljovich regarding service on Kodiak, which was represented to the Court and Plaintiffs' attorney in a hearing on the record, in which Veljovich also explained his comments to the process server that his authority did not extend to Kodiak as agent of XYZ Corporation.

Finally, despite proof that Kodiak was served as set forth above, there can be no doubt that all of Plaintiffs' efforts outlined above, which included leaving a copy of the complaint at the address for an agent of the company, and mailing it to him, individually and on behalf of the Company, constituted substantial compliance with the law governing service of summons. *Tejada*, supra.  This is true particularly where Stoen, as a managing member of Kodiak, signed a declaration which was filed in this case on October 27, 2010.   *Id*. ("As long as the defendant received actual notice of the lawsuit, substantial compliance with the Code provisions governing service of summons will generally be held sufficient") *Tejada*, at p. 5.

## II.   <u>Kodiak has not and cannot meet the standard for vacating the default judgment.</u>

Pursuant to Rule 55(c), a court may set aside a default for "good cause shown."  The standard for showing "good cause" is the same standard that applies to vacating a default judgment under Rule 60(b).  *Oracle USA, Inc. v. QTrax, Inc*., 2010 WL 3515767 (N.D. Cal. 2010).  A district court may deny a motion to vacate a default if: 1) the plaintiff would be prejudiced if the judgment is set aside, 2) the defendant has no meritorious defense, or 3) the defendant's culpable conduct led to the default.  *Id*.  Moreover, it is well established that the

---

was also served at that time as agent of Kodiak.  Service on Stoen through Veljovich is service on Kodiak even if Veljovich was not authorized to accept service for Kodiak (which of course is disputed).

---

No. 3:10-CV-02130
10
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

Court may deny the motion to vacate if any *one* of these factors is true:   "'This tripartite test is disjunctive,' meaning that the district court may deny a motion to set aside a default if any of these three factors are true." *Id*. (Citation omitted).  Accordingly:

> "[I]t is clear that the party seeking to set aside a default must show that it was not culpable, that it has a meritorious defense, *and* that plaintiff will not be prejudiced as a prerequisite to showing good cause – and the failure to show *any one of these three factors* is grounds for denying a motion to set aside the default." *Id*. (Emphasis original).

Here, Kodiak has failed to establish any of these factors, and its Motion to set aside the judgment must be denied.

### A.      Kodiak engaged in Culpable Conduct, not excusable neglect under Rule 60(b)(1)

There is no dispute here that Kodiak had actual notice of the Complaint and the Motion for TRO within one week of the date the Complaint was filed.  Under some cases in the Ninth Circuit, that failure alone is "indicative of culpability and an appropriate basis on which to deny a motion to vacate." *U.S. v. $32,000 in U.S. Currency*, 2006 WL 1883274 )(N.D. Cal. 2006). Even under Ninth Circuit cases which require an "intentional," failure to respond,  Kodiak is clearly within that standard, where "'there is no explanation of the default… inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'"  *Id., quoting TCI Group Life Insurance Plan v. Knoebber,* 244 F. 3d 691, 699, n. 6 (9th Cir. 2001).  That is the case here.  As in the *U.S. Currency* case, Kodiak did not argue that it did not have notice of the action.  Nor could it argue that it didn't have notice of the Motion for Default Judgment, or that it sought any relief or extension of time because it could not afford an attorney.  As in that case, here, Kodiak had access to an attorney,  its agent, Stoen, hired one to defend him personally, and Kodiak has presented no reason as to why it did not seek an extension or file a simple response, and then

No. 3:10-CV-02130
11
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

waited three months *after* the judgment was entered to take action. [6] Kodiak's suggestion in its memorandum that "until Kodiak became aware of the default judgment, it did not have reason to believe that Plaintiffs believed it was served" (memorandum, p. 25) is beyond believability (and is in fact an unadulterated untrue statement and misrepresentation to the Court, given the October 22, 2010 hearing, the fact that Kodiak and Stoen were served with the Motion for Default Judgment, and furthermore, that Stoen filed a motion to vacate default and *participated* in the hearing on Plaintiff's Motion for Default Judgment.

It is also undisputed that Stoen (and other companies, including Kodiak Life Partners LLC, in a suit for rent for the premises at which Kodiak last did business) are defendants in other lawsuits (See, Affidavit of Alison Franklin, doc. 26) and are therefore not only familiar with the process but seasoned litigants.  As the Ninth Circuit stated:

> "[W]e have tended to consider the defaulting party's general familiarity with legal processes or consultation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith. (Citation omitted).   Absent some explanation… it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer *and do so only if they see some advantage to themselves.*"

***TCI Group Life Insurance Plan v. Knoebber***, *244 F. 3d 691, 699, n. 6* (9th Cir. 2001).

Similarly, in the ***U.S. Currency case***, the Court found:

> "The court finds that the absence of any good faith explanation for the delay and the relative legal sophistication of the claimant weigh in favor of a *determination that claimant's actions are culpable*. … The omission appears to be nothing more

---

[6] It is worth noting that in his own Motion to Vacate the default, Stoen claimed he didn't appear or answer because he thought Veljovich *was* representing him, and filed a declaration to that effect  (Doc. 77-2, Exhibit B to Devlin declaration).

No. 3:10-CV-02130
12
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

than an intentional failure to respond to the complaint – suggestive of an intent to manipulate the legal process.  Claimant's failure over a period of four months to seek an extension or otherwise file an answer is culpable conduct."

*Id.* at 6. (Emphasis added)

That is clearly the case here, and the default judgment should not be vacated.  If Kodiak had any reason not to defend, it was clearly tactical.

## B. Kodiak does not offer any evidence or authority for vacating the judgment pursuant to Rule 60(b)(3) or 60(b)(6).

The Motion before this Court is a motion to *vacate* a default judgment, not the motion itself, and Kodiak's arguments regarding damages are unsupported by evidence and unrelated to vacating the judgment. Kodiak points to no mistake or inadvertence (let alone misconduct) regarding the award of damages which would justify vacating the judgment under Rule 60(b). While the rule normally refers to mistake or inadvertence by a party, in *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F. 3d 347 (9th Cir. 1999), the Court held that reduction of a judgment (not default) entered would be proper where the judge *stated* that he signed the order inadvertently.  The fact that Kodiak doesn't agree with the award, of which it had notice prior to entry, and which was supported by evidence, is not such as basis and Kodiak presents no evidence or authority to the contrary.   Similarly,  Kodiak offers no basis for its argument (legal or factual) for its lack of standing argument, since Plaintiffs plead that the individual insureds or insurance trusts authorized Plaintiffs to sell their policies, that Preserve was the sole member of MBM Settlements, LLC, and that the Purchase Agreement for the sale of the policies was through the limited liability company interest assignment and sale agreement, which was between Preserve and Bank of Utah and which provided for the transfer of the interest in MBM from Preserve to Bank of Utah as Trustee for the Emerald Isle LSF Trust.  Moreover, Michael

No. 3:10-CV-02130

13
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

O'Malley testified that the trustees assigned the beneficial interests in their insurance trusts holding the policies to MBM Settlements, LLC.  (O'Malley Affidavit, attached as **Exhibit 2** hereto).  Finally,  Pam Szekely's affidavit meant what it said:  Preserve has paid the interest costs described in the Affidavit.  Kodiak presents no evidence to contradict Pzekely's Affidavit, and cannot do so.

As set forth, Kodiak's arguments regarding lack of knowledge regarding the default judgment is belied not only by Scott Miller's affidavit regarding service of the Motion on Stoen individually as well as in his capacity as agent for Kodiak, but by Stoen's Motion to Vacate Default and his pleadings in opposition to the Motion for Default Judgment and his participation in the hearing itself through counsel.

Nor does Kodiak allege, let alone establish, misconduct or fraud required to set aside a judgment pursuant to Rule 60(b)(3).  In order to set aside a judgment on this basis, any such fraud must be shown by clear and convincing evidence, and must have prevented the moving party from fully and fairly presenting his case.  Kodiak has not done that here.  Apparently Kodiak is alleging fraud based upon a) statements by Preserve related to the policies and whether they were premium-financed, and b) whether they were IOLI/STOLI policies.  However, Plaintiffs did not engage in any misrepresentation with respect to the financing of the policies; as set forth in the Complaint, Mike O'Malley advised Stoen and Kodiak from the outset that the policies were subject to loans, and Stoen acknowledged this fact in an e-mail dated January 27, 2010 (4-3, Exhibit N).  Additionally, the policies are not IOLI/STOLI policies, as set forth in Mike O'Malley's affidavit, attached hereto (and which has been further discussed in his recent deposition, see deposition transcript pages 21-22, 38 – 40, attached hereto as **Exhibit 3.**)

No. 3:10-CV-02130

14
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

Matthew Stoen has no factual basis for contending otherwise, and offers none, falling far short of establishing misconduct or fraud, let alone establishing it by clear and convincing evidence.  See, ***U.S. v. Reed***, 2007 WL 405034 (E.D. Cal. 2007).

Similarly, a party seeking to set aside a default judgment under Rule 60(b)(6) bears the burden of establishing "extraordinary circumstances" to justify disturbing the judgment.  To meet that burden, "[t]he party must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the … defense of the action in a proper fashion."  ***Id.***  Here, Kodiak has failed to do that.  Rather, it has made arguments it would make if it had defendant the Motion for Default Judgment against it, something it deliberately chose not to do.[7]

Plaintiffs also provided the response regarding citizenship of the parties in response to the Court's initial inquiry (Doc. 12), and Kodiak has failed to provide any  facts or documentation much less a scintilla of evidence to establish that that information is insufficient.

---

[7] For example, Kodiak argues that the ***Frow*** principle would preclude entry of default judgment. While the *Frow* principle may apply in certain circumstances, those circumstances do not exist here.

---

No. 3:10-CV-02130
15
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

### C.  Kodiak has not set forth facts which establish a meritorious defense to Plaintiffs' Complaint.

As Judge Huff determined, Plaintiffs stated claims for all of their causes of action against

Kodiak, which allegations are taken as true once default has occurred[8]:

> "The allegations in the complaint, taken as true, would establish these causes of
> action. The complaint also alleges causes of action for breach of oral contract and
> negligent interference with prospective economic advantage against Kodiak and
> Stoen. (Id. at 17-20, 21-22.) The allegations in the complaint, taken as true, would
> also establish these causes of action. Though the sum of money at stake is
> substantial, the Court concludes that it does not warrant denial of Plaintiff's
> motion for default judgment. Furthermore, the possibility of a dispute concerning
> material facts does not weigh against entry of default judgment. Defendant
> Kodiak has failed to dispute any of Plaintiffs' factual allegations and, *upon entry*
> *of default, well-pleaded facts in the complaint except those relating to damages*
> *are taken as true.* TeleVideo Sys., 826 F.2d at 917-18."

Judge Huff's Order, (Doc. 100, p. 5)(emphasis added).

Moreover, a defendant seeking to vacate a default judgment must present specific facts

that would constitute a defense.    ***TCI Group Life Insurance Plan***, supra.  Kodiak has failed

miserably in this regard and has not done that here.  Defendant has merely offered bald,

unsupported conclusory arguments attacking the Complaint, not establishing defenses.

Defendant Ozanne has pleaded that  Kodiak received nearly five hundred thousand dollars of the

funds deposited by Plaintiffs (Ozanne's response to TRO, served but not filed based on claim of

confidentiality).  Kodiak has not offered facts to establish a basis for failure to return the funds to

---

[8] Here, since an entry of default entered on December 14, 2010, all well-pleaded allegations
of the Complaint are taken as true.  ***Northern California-Northern Nevada Sound &***
***Communications v. Diamond Communications, Inc.***, 2007 WL 1521548 (N.D. Cal.
2007)(Grant of default judgment appropriate; no possibility of a material dispute as to the alleged
facts because all well-pleaded facts are taken as true.)  Moreover, the evidence Plaintiffs have
submitted in connection with their Motion for TRO support Plaintiffs' account of the events, so
that this factor supports entry of default judgment.  See, ***District Council 16 Northern Ca.***
***Health & Welfare Fund v. Mortensen's Carpets, Inc***., 2010 WL 1956725 (N.D. Cal. 2010).

No. 3:10-CV-02130

16

Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

Plaintiffs under the Addendum, which refute breach of its oral agreement with Plaintiffs, or refute any of the other of Plaintiffs' claims.

### 1.   None of Conditions precluding return of the Plaintiffs' funds occurred.

The Addendum provides:

> "The foregoing is the 'break up fee.'  Said fee shall be non-refundable only in the event that the Seller is unable to provide the documentation listed on Schedule 1 prior to the closing, is unable to procure the required signatures to close the "life settlement" transaction, or in the event that any of the life carriers identified above contest the validity of any of the policies, and, for any of these reasons, the transaction does not close. The break-up fee, together with interest at 6% per annum, shall be fully refundable to Seller if the life settlement transaction closes, by credit at closing, or if the transaction fails to close for any other reason, including the parties' failure to agree on the terms of the escrow and purchase agreement or Buyer's failure to perform any of its obligations hereunder.  In the latter circumstances, Buyer shall pay Seller such deposited amount, or deposit the funds in an account designated by Seller, no later than the date on which closing was scheduled to occur." (emphasis added).

Kodiak's claims in its memorandum and in Stoen's declaration do not provide a basis for retaining Plaintiffs' funds pursuant to the Addendum, and they are inconsistent with the Defendants' statements and actions to Plaintiffs.   Plaintiffs additionally incorporate their pleadings and affidavits in support of the TRO on these issues (Doc. Nos. 1, 4, 24-34, 39).

### 2.   The fact that  Kodiak, was the agent for the Buyer, and not the Buyer, is not a defense to liability under the  Escrow Agreement and Addendum.

In his declaration filed on October 27, 2010 Stoen admitted that he was a managing member of Kodiak Family LLC, and that Kodiak was acting as agent for Emerald Isle LSF limited.  At the time the offer was made, the identity of the Buyer was not disclosed; Stoen signed the Agreement as "agent for Buyer."  An agent may be liable for the authorized contract of his originally undisclosed principal.  See, e.g., ***Standard Oil Company of California v. Doneux***, 192 Cal. App. 2d 608 (Cal. App. 1961).  Moreover, factually, the statement of

No. 3:10-CV-02130
17
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

distributions served by Ozanne in response to the Court's November 2, 2010 Order reveals that *none* of the Deposited Funds were paid to Emerald Isle LSF limited; rather, Kodiak Family LLC, received $492,924.25 of the Deposited Funds.  The other funds were paid to agents of Ozanne and/or Kodiak, including Ozanne.  The funds were paid to Kodiak primarily in large sums a day or two after each of Preserve's deposits.  See, Exhibit A to Defendant Ozanne's Response to Court Order.) Matthew Stoen controlled Kodiak, and was the only representative of Kodiak (other than Ozanne, its attorney) with whom Michael O'Malley or any of the Plaintiffs had any dealings. There was no Emerald Isle LSF Limited. (Hoggan dep, cited below.)  At best, Emerald Isle LSF Limited was a shell entity to be formed.   The payments to Kodiak, based upon the well-pleaded allegations of Plaintiffs' Complaint, render it (and Stoen) liable not only for breach of the Escrow Agreement, but conversion and unjust enrichment.   Kodiak has not offered facts supporting a meritorious defense to any of Plaintiffs' claims against it.[9]

>3. Evidence establishes that the Plaintiffs' policies had nothing to do with the failure of the Transaction to close.

The transaction failed to close because, contrary to Defendants' representations to Plaintiffs, there was no committed buyer, and no funds were ever provided for the purchase.  The Escrow Agreement, signed by Stoen, represented that there was a buyer for the portfolio offered for sale by Preserve.  The buyer was later disclosed as Emerald Isle LSF Limited.  However, the Bank of Utah, the trustee for the Emerald Isle LSF Trust, had not heard of any such entity. (Deposition of Michael Hoggan, pp. 53-54.)   The Bank was never able to confirm the identity of or contact the buyer.  (Id., p. 106, pp. 126-27).  The trust was never funded, and never had any

---

[9] In his deposition testimony last week, Stoen admitted that if the Defendants are required to repay the funds deposited by Plaintiffs, Kodiak would have to repay those funds. The deposition transcript will be available in several days.

18
No. 3:10-CV-02130
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

assets or filed any tax returns (Id., pp. 51-52). [10] The trust, which was the purchaser of the policies via the Purchase Agreement, was merely a shell, and no sale of any policies – including those belonging to other sellers – ever closed.   (Deposition of Michael Hoggan, pp. 22, 31, 44-46,). This was a concern to the Bank of Utah, as Trustee, since "we did not want to be in a position where the trust had entered into agreements and there were no means to actually follow through and purchase the policies that were the subject of those agreements."  (Id., p. 27) (These excerpts from the deposition are attached as **Exhibit 4.**)  Throughout the process, through May, 2010, as established during the TRO proceedings, Defendants continued to reassure Plaintiffs that the closing was moving forward (See, Court's Memorandum Decision granted Limited TRO, dated November 2, 2010, p. 6).

> ### D.    Plaintiffs would be severely prejudiced if the judgment against Kodiak is vacated.

Here, Kodiak has acknowledged that it was defunct at the time the Complaint was filed. Defendants Ozanne and Stoen have failed to produce an operating agreement or other documentation related to the company, other than the records on file with the Nevada Secretary of State showing Stoen as one of the two managing members (see, doc. 12).   At all times, Kodiak has functioned through and been the alter ego of Stoen, against whom  judgments have already entered.  (Doc. 26, supra).   Accordingly, Plaintiffs would be severely prejudiced in their ability to pursue their claim against Kodiak if the default judgment is vacated.  See, ***Shanghei Automated Instrument Co. Ltd. v. Kuei,*** 194 F. Supp. 2d 994, 1004-5 (N.D. Cal. 2001).

---

[10] This was confirmed by Ozanne and Stoen in their depositions; transcripts of those depositions will be available soon.

---

No. 3:10-CV-02130
19
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

## <u>CONCLUSION</u>

Kodiak has not established that any basis exists for vacating the default judgment entered against it more than three months ago. Matthew Stoen's declaration is improper and should be stricken.  Kodiak had actual knowledge of the lawsuit beginning one week after the suit was filed, and chose not to defend, despite the participation of its managing member in the lawsuit in October, 2010 (doc. 23-2), service of the Motion for Default Judgment and supporting Affidavit on it (Doc. 70), and his appearance in this case in January, 2011.  David Veljovich accepted service although he did not appear for Kodiak.  Kodiak's conduct is culpable, it has no meritorious defense, and Plaintiffs would be severely prejudiced if the judgment it obtained is vacated and not rendered final.   While a finding of culpability by Kodiak alone, which clearly exists here, would support denial of Kodiak's Rule 60(b) motion, the fact that both other factors are also present provides additional support for that result, and Kodiak's Motion to Quash or in the Alternative to Set Aside Default Judgment should be denied.  See, ***Homefront, Inc. v. Cashmere Crafts, Inc.***, 2005 WL 3369988 (N.D. Cal. 2005)(where two of three factors supported denial of motion to vacate, the motion would be denied and judgment would enter.) Plaintiffs also seek fees and costs incurred in responding to this Motion.

Date:    May 9, 2011                    Respectfully submitted,

**PICCIONE, KEELEY & ASSOCIATES LTD.**

By:   /s/ Patrick C. Keeley
Patrick C. Keeley (*pro hac vice*)
*pkeeley@pkalaw.com*
 122C South County Farm Road
 Wheaton, Illinois 60187
 Telephone: (630) 653-8000
 Facsimile: (630) 653-8029

No. 3:10-CV-02130
20
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment

1

2

**NIELSEN, HALEY & ABBOTT LLP**
Peter C. Haley, SBN 41724
*phaley@nielsenhaley.com*
44 Montgomery Street,  Suite 750
San Francisco, California 94104
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

3

4

5

6

***Attorneys for Plaintiffs***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 3:10-CV-02130

21
Memorandum of Points and Authorities In
Opposition to Defendant Kodiak Family LLC's Motion to Quash Service
and Dismiss Or, In the Alternative, to Set Aside Default Judgment