Justin R. Stockton
LAW OFFICES OF JUSTIN R. STOCKTON
1021 Calle Anacapa
Encinitas, California 92024
Phone: 858.437.1429/fax: 760.633.1486
email: JustinStockton@yahoo.com
California Bar # 200951

Attorney for Defendant KODIAK FAMILY,
LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

| | |
|---|---|
| O'M AND ASSOCIATES, LLC, ET AL. | ) **Case No. 10-cv-2130 H (RBB)** |
| Plaintiff, | ) |
| vs. | ) **REPLY MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN SUPPORT OF** |
| | ) **MOTION TO QUASH SERVICE AND** |
| BRENDAN K. OZANNE, ET AL. | ) **DISMISS, OR IN THE ALTERNATIVE, TO** |
| | ) **SET ASIDE DEFAULT JUDGMENT** |
| Defendants. | ) |
| | ) **\*BY SPECIAL AND LIMITED** |
| | ) **APPEARANCE\*** |
| | ) |
| | ) Date: May 23, 2011 |
| | ) Time: 10:30 a.m. |
| | ) |
| | ) Courtroom: 13 |
| | ) Honorable Judge Anthony J. Battaglia |
| | ) |
| | ) Action Filed: October 13, 2010 |
| | ) |
| | ) Trial Date: None Set |

By special and limited appearance, Kodiak Family, LLC ("Kodiak") states as follows:

**A.     VELJOVICH'S STATEMENTS AT THE FIRST TRO HEARING ARE NOT RELEVANT TO THE ISSUE OF WHETHER KODIAK WAS PROPERLY SERVED; AT BEST, ANY AMBIGUITY IN THOSE STATEMENTS IS ONE OF THE FACTORS THAT MAY BE CONSIDERED IN DECIDING IF PLAINTIFFS SHOULD BE PERMITTED ADDITIONAL TIME UNDER RULE 4(M) TO SERVE KODIAK.**

Plaintiffs respond to Kodiak's Rule 12(b)(5) motion by arguing that Veljovich "unequivocally represented to Judge Huff" at the first TRO hearing that he "was authorized to accept service on behalf of Kodiak."  (Dkt. 154.)  At best for Plaintiffs, Veljovich's statements were unclear.

At the hearing held on October 22, 2010, Judge Huff asked Veljovich who he was representing, and Veljovich stated "I'm just appearing for Mr. Ozanne at this point in time." (Dkt. 108 at 2.)  Judge Huff requested an update from Plaintiffs regarding service, and Plaintiffs' counsel tellingly stated "we received an E-mai1 from Mr. Stone [sic] saying that counsel who's present in court can accept service for *him*…."  (*Id.*)   Judge Huff then asked Veljovich if he agreed that Mr. Stoen sent an email stating that Veljovich "can accept service for *him*," and Veljovich said "Yes, your Honor."  (*Id.* at 3.)  After Plaintiffs' counsel stated "I think all of the defendants have been served," (*Id.* at 2.), Veljovich first stated that he was authorized to accept service on behalf of all of the Defendants except for Brian Dawson.  (*Id.* at 3.)  However, Veljovich immediately corrected his statement:

> So I think all of the Defendants except for I believe XYZ Corporation as a fictitious name in the complaint due to the documents under seal.  I did not have any authority to accept on behalf of that company, *and a process Server attempted to serve me on behalf of Kodiak Family, LLC as agent for that entity, xyz corporation, and I indicated I did not have any authority to accept in that capacity.*

*Id.* (emphasis added).  Thus, Veljovich was stating that he could not accept service for Kodiak, and he apparently understood from the process server that Plaintiffs were trying to serve Kodiak by service upon the fictitious XYZ corporation.  Veljovich then went on to state his belief that Kodiak had been served, but he did not state how or why he understood that service to have been effectuated.  *Id.*

Veljovich's statements were not "unequivocal," as suggested by Plaintiffs.  His statement that the process server "attempted to serve me on behalf of Kodiak" should have at least caused

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
SERVICE AND DISMISS

Plaintiffs to make further inquiry, if not immediately, then when Kodiak did not appear.   To the extent of an ambiguity, Veljovich made it crystal clear in his Declaration that he was not authorized to accept service for Kodiak and that he so informed the process server.  (Dkt 108 at 2.) Veljovich submits a second Declaration, in which he reiterates that he was not authorized to accept service for Kodiak.  (Second Declaration of David Veljovich, Ex. A.)  In fact, when Veljovich indicated that he was authorized ot accept service of all defendants, except Mr. Dawson, he was making reference to the law firm defendants, Dawson & Ozanne, Brendan K. Ozane and Brian Dawson.  (Ex. A, ¶6.)  In his declaration, Stoen clearly states that he did not authorize Veljovich to accept service for Kodiak. (Dkt 135-1, Ex. A.)   Veljovich's affidavit corroborates this fact.

In any event, nothing that Veljovich stated could demonstrate proper service, because "reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service." *Bloomfield v. County of Imperial*, 2008 WL 45795, *1-2 (S.D.Cal. 2008) (quoting *Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1307 (3d Cir. 1995)); *Matasareanu v. Williams,* 183 F.R.D. 242, 245-47 (C.D.Cal. 1998) (citing *Petrucelli* with approval).  Veljovich stated at the first TRO hearing that he did not represent Kodiak.  He never had any connection to Kodiak.  The single communication by which any actual authority could have been conveyed was Mr. Stoen's October 19, 2010 email.  Both Mr. Stoen and Veljovich have stated that Veljovich did not have authority to accept service for Kodiak, and the email does not mention Kodiak.  Plaintiffs do not point to any act of Kodiak to suggest that it agreed that Veljovich could accept service for Kodiak.  Veljovich's statements at the TRO hearing, in addition to being ambiguous, do not in any case establish proper service, both because he in fact was not authorized to accept service and because an "agreement to accept service" is not a

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
SERVICE AND DISMISS

waiver of service.  At best for Plaintiffs, any claimed confusion of Plaintiffs is one factor that could be considered in deciding if Plaintiffs should be given additional time to effectuate service.

**B.  FAILED SERVICE UPON A "DOG SITTER," THE MAILING OF A COMPLAINT TO A "LAST KNOWN ADDRESS," AND "ACTUAL NOTICE" DO NOT ESTABLISH PROPER SERVICE.**

As detailed in Kodiak's motion, service could have been made personally upon an individual designated by Kodiak as its agent for service of process (California Corporations Code § 17061), or under the provisions of the Code of Civil Procedure governing service of process, Section 413.10 *et seq.*  Plaintiffs do not contend that they made service in either of these ways.  Plaintiffs also do not contend, and instead admit that they did not serve Kodiak under Section 415.20, which permits service at the "usual place of business."  (*See* Dkt. 154).  A mailing is relevant only where service is effectuated under Section 415.20, in that it also requires that the summons and complaint thereafter be mailed to the defendant at the place where a copy of the summons and complaint were left.  Thus, neither a failed attempt to serve a dog sitter, nor sending the summons and complaint to Stoen in the mail is proper service.

Likewise, actual notice does not establish proper service or give a court *in personam* jurisdiction over a defendant.  *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987); *Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir. 1986).  Plaintiffs cite to a portion of the default judgment entered by Judge Huff referencing Kodiak's actual notice of the lawsuit, which no doubt was self-serving language proposed by Plaintiffs, but which in any event is immaterial.  Kodiak's actual knowledge of the litigation does not supply an excuse for failing to serve Kodiak, nor does it confer personal jurisdiction to permit the entry of a judgment against it.

Plaintiffs' references to Stoen as a "managing member" and a "managing agent" of Kodiak do not change the result, and also are factually incorrect.  Mr. Stoen states in his Declaration that he was one of four members, and one of two managers of Kodiak, a manager-managed limited

4

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS

liability company.[1]  First, Plaintiffs know that Kodiak is manager-managed, not member managed, as they filed documents from the Nevada Secretary of State reflecting same.  (Dkt. 12.)  Second, there is no such thing as a "managing agent."   The person designated as "agent for service of process" under § 17061 of the California Corporations Code is the registered agent.  Stoen was never the registered agent for Kodiak, and Plaintiffs do not suggest otherwise.  As set forth in his Declaration, Stoen was one of two managers.  In any event, however, Stoen was never served – and any discussion of whether service upon Stoen as an agent of Kodiak would have been proper service on Kodiak is therefore moot.  Plaintiffs' reliance upon the provisions of Rule 4 for service upon a corporation and related case law is misplaced, as Kodiak is not a corporation, and in any event, Plaintiffs did not actually serve Stoen.

Plaintiffs assertion at footnote 5 of its brief that "service" upon Stoen through delivery of documents to Veljovich, based on Stoen's October 19, 2010 email, constitutes service upon Kodiak, is unsupported by a single legal authority and is nonsensical.  If Stoen had actually been served with a summons and complaint for Kodiak, and if he was an agent authorized by Kodiak to receive service, then the discussion would be different.  But, this is not what took place.  First, Stoen was not served.  He authorized Veljovich to receive documents for him, and he later appeared in the case.  An agreement to accept service is not a waiver of service.  Second, there was no agreement, and the only evidence of the agreement is the email and the Declarations of

---

[1]    Although irrelevant to the issue of service, Plaintiffs statement at fn 1 that Mr. Stoen testified that Brendan Ozanne was an economic interest holder, and not a member of Kodiak is factually incorrect.  Mr. Stoen did not so testify.  It was Mr. Ozanne that mistakenly stated he was an "economic interest holder," a term for which Plaintiffs' counsel refused to lay a foundation and which, it was abundantly clear, was not even correctly understood by him.  In addition, Plaintiffs' mistakenly conclude that Stoen's affidavit is somehow incompetent to establish these facts, because it does not identify the names of the other members. Stoen states, based on personal knowledge, that he was a member and manager of Kodiak.  As such, he was in position to know the other members and managers.  His statement that there were four members and two managers is competent to establish this fact.  Finally, Plaintiffs mislead the Court by suggesting that Stoen's averments in his Declaration were made on information and belief.  As clearly reflected in the Declaration, the Declaration contains only two isolated statements that are made on information and belief, both in paragraph 13 and both going solely to one of a myriad of meritorious defenses of Kodiak.

Stoen and Veljovich; none of which support a finding of an agreement relative to Kodiak. Either of these facts standing alone preclude a finding of proper service. *See Bloomfield v. County of Imperial*, 2008 WL 45795, \*4-5 (S.D.Cal. 2008) (holding that "Perez's agreement to accept service on behalf of all Defendants did not operate as a waiver of service for Defendants Gonzalez and Carter because an "agreement to accept service does not equal an agreement to waive service" and because "there is no evidence that Defendants Gonzalez and Carter intended to waive service here").

Plaintiffs argue, however, that even if service was flawed, they substantially complied with some unidentified rule of service, and Kodiak had actual notice of the lawsuit. (Dkt, 154, at 10). Plaintiffs rely on a single case, *Tejada v. Sugar Foods Corp*, 2010 WL 4256242 (C.D. Cal. 2010). *Tejada*, a case involving a "technical error" consisting of a misdescription of the person served, is easily distinguishable. *Id.* at \*1. In *Tejada*, the process server served the summons and complaint on an employee of Sugar Foods, at its usual place of business. *Id.* In the proof of service, the process server correctly identified the name of the employee, but misdescribed his height and weight. *Id.* The process server had also mailed the summons and complaint to the CEO of Sugar Foods, at that same place of business. *Id.* The month after service, Sugar Foods' attorney obtained a copy of the summons and complaint from the state court website. *Id.*

Sugar Foods stated that it did not receive the summons and complaint from its employee. However, the very employee who was served admitted that he was "employed in a capacity in which he sometimes accepts service of process for the corporation." *Id.* at \*4. In addition, the employee did not even deny being served. *Id.* The court held that service was proper, notwithstanding the misdescription of the employee's height and weight, and that Sugar Foods did not rebut that the process server also mailed the summons and complaint to its usual place of business. *Id.* Sugar Foods was served by substitute service under California Code of Civil

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS

Procedure § 415.20, which permits service upon a corporation by leaving a copy of the summons and complaint at the corporation's office with the person who is apparently in charge and thereafter mailing a copy to the defendant at the place where a copy of the summons and complaint were left.  *Tejada v. Sugar Foods Corp*, 2010 WL 4256242, *5.  That is precisely what the plaintiff in that case did.  Service was not rendered invalid, nor rebutted by the fact that the process server was off on the employee's height and weight.  *Id.*

   *Tejada* did not involve facts even remotely similar to the facts of this case. Plaintiffs here did not rely upon substitute service. They did not actually serve Kodiak or even Stoen.  This case does not involve a technical error like a mistaken physical description, such that the plaintiff was in substantial compliance with the rules of service.  There was no service at all here.  The fact that Plaintiffs claim to have mailed a copy of the summons and complaint to Kodiak's last known address (which it knew Kodiak was not located at) is irrelevant because Plaintiffs do not claim to have effectuated substitute service.  That fact was relevant in *Tejada* because the defendant was served by substitute service. Plaintiffs' purported "substantial compliance" consisted of leaving papers with Veljovich over his objection and contrary to anything Stoen said in his email; trying but failing to serve a "dog sitter," and mailing the summons and complaint to a location at which it knew Kodiak was not present (Dkt 154.)  This is miles away from the service found to be sufficient in *Tejada.  Tejada* is inapposite.

   A liberal construction of Rule 4 "'cannot be utilized as a substitute for the plain legal requirement as to the manner in which service of process may be had.'"  *Reeder v. Knapik*, 2008 WL 3843516, *1 (S.D.Cal. 2008) (quoting *Mid-Century Wood Products, Inc. v. Harris*, 936 F.2d 297, 300 (7th Cir.1991) (other citations omitted).  Although a court might excuse a technical error in service where the defendant has actual notice of the suit, there must be substantial compliance with Rule 4.  *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132,

7

1135 (9th Cir. 2009). "No California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service." *Summers v. McClanahan*, 140 Cal.App.4th 403, 414 (Cal.Ct.App. 2006). For example, service upon an individual employed by a defendant-entity but who is not authorized to receive service for the entity is not substantial compliance. *See, e.g., Audio Toys, Inc. v. Smart AV Pty, LTD*., 2007 WL 1655793, *4 (N.D. Cal. 2007); *Dill v. Berquist Construction Company*, 24 Cal.App.4th 1426, 1438, (Cal.Ct.App. 1994).

There was no technical error in the case at bar; there was a complete failure to serve Kodiak under the applicable service rules. No amount of liberal construction can render delivery of the summons and complaint to Veljovich, whom Plaintiffs admit is not an agent of Kodiak, to be proper service. It does not come within a country mile of satisfying any permissible method of service under Rule 4 or California law.

In addition to failing to cite any authorities to support their position, Plaintiffs fail to address any of the cases cited by Kodiak. Plaintiffs have no answer for *Bloomfield*, *Aureguy,* or any of the other cases cited by Kodiak, because the facts of those cases are analogous to and indeed even less compelling than the facts of this case. The default judgment should be set aside. It is void. Further, Kodiak should be dismissed under Rule 4(m), an issue which Plaintiffs completely failed to address and thusly waived.

## C. ASSUMING ARGENDO THAT KODIAK WAS SERVED, THE DEFAULT JUDGMENT SHOULD STILL BE SET ASIDE.

### 1.    Kodiak's failure to respond was not devious, deliberate, willful, or in bad faith.

Plaintiffs argue that an intentional failure to respond is sufficient to deny a motion to vacate, where devious, deliberate, willful, or bad faith failure to respond. Plaintiffs essentially disregard the fact that Kodiak did not believe it had been served (and in fact was not), and that

even if it had doubts (which it did not), it did not have funds to retain a lawyer to voluntarily appear in an abundance of caution. Plaintiffs cannot point to a single fact to suggest that Kodiak should have thought it had been served. Where a party does not respond because it believes, in good faith, that it is not required to, the lack of a response cannot be willful, nor in bad faith. There likewise is nothing willful about the inability to retain counsel when a party can appear only through counsel.

Plaintiffs point to the fact that Stoen hired counsel to appear on his behalf, but that does not bear upon Kodiak's ability to do so. Stoen, one of four members and one of two managers of Kodiak, was not obligated to personally fund Kodiak's defense. In any event, the law in the Ninth Circuit has not changed -- "where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v. Bullock's Inc.,* 508 F.2d 353, 354 (9th Cir. 1974).

Plaintiffs also argue that the default judgment should not be set aside because three months elapsed between the entry of default judgment and the filing of Kodiak's motion to vacate. A motion to set aside must be brought "within a reasonable time," and no more than a year after the entry of judgment. Fed.R.Civ.P. 60(c)(1). In this case, Kodiak was not served. At a minimum, Kodiak did not have reason to believe that it had been served. Notably, to the extent of any claimed confusion by Plaintiffs based on Veljovich's statements *after* the alleged service, Kodiak did not know or have any reason to know of any such confusion. It was not privy to these statements. Once default judgment was entered based upon Plaintiffs' mistaken (in the best light) representations as to service, it did not become Kodiak's burden to appear and disprove service. The judgment was void.

Kodiak acted reasonably, under the circumstances.  Once deciding to seek counsel notwithstanding the absence of service, Kodiak had to do so without being able to fund a retainer.  Not surprisingly, its efforts were unsuccessful.  Approximately one month prior to the filing of the instant motion, Kodiak believed that it had secured other counsel, but that counsel later declined due to competing professional obligations.  Once the undersigned counsel was retained, it took more than two weeks to review the extensive filings in this case, and applicable law.  The instant motion was a substantial effort.  Under these circumstances of this case, three months is not unreasonable.  Moreover, given the totality of the circumstances, including the unforeseeable and unfounded amount of the default judgment, an alleged delay amounting to some number of weeks cannot supersede the strong policy in favor of resolving disputes on the merits.

2. **The circumstances surrounding the entry and amount of the default judgment separately warrant setting the default judgment aside.**

Plaintiffs also argue that the amount of the judgment and the manner in which it was "determined" are not pertinent to a motion under Rule 60(b).  Plaintiffs are just ignoring the legal authorities cited by Kodiak.  First, the Court can vacate or modify the default judgment based on the mistake or inadvertence of a party or the court.  *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).  Kodiak convincingly demonstrates that the amount of the judgment resulted, at best for Plaintiffs, from mistake or inadvertence of either or both Plaintiffs and the Court.  It is irrational and unsupported by competent evidence.

Second, approximately $8.8 million of the over $9.5 million default judgment consisted of unliquidated damages, and an evidentiary hearing was therefore required.  *Davis v. Fendler,* 650 F.2d 1154, 1161-62 (9th Cir. 1981).  Judge Huff did not hold an evidentiary hearing, and instead entered the default judgment order proposed by Plaintiffs, based upon a single affidavit that says almost nothing.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS

Third, under Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  The allegations must supply the defendant with reasonable notice the potential amount at stake.  *See Anunciation v. West Capital Financial Services Corp.*, 97 F.3d 1458 (9th Cir. 1996).  Plaintiffs sought damages in Count I, III, and IV against Kodiak in the amount of $678,750, plus 6% interest from when it was deposited in 2010; and "in excess of $2,000,000" in Counts VI and VIII for breach of a fabricated oral contract and negligent interference with that oral contract.  The default judgment here, in excess of $9.5 million, does not begin to satisfy Rule 54(c).

This Court has the authority to vacate or modify the default judgment, based upon its amount and particularly in light of the absence of an evidentiary hearing.  Plaintiffs did not even plead, much less prove even a small fraction of the amount of the default judgment.  Kodiak did not have reasonable notice of a lawsuit that could result in a judgment of this size.  The default judgment cannot withstand review, and a district court retains the ability to correct the erroneously entered default judgment.

### 3. Plaintiffs' arguments in which it disputes the facts only undermine its opposition to Kodiak's motion.

Plaintiffs spend most of their brief arguing the facts.[2]  The affidavit of Michael O'Malley is dedicated solely to arguing facts.  At the same time, Plaintiffs assert that Kodiak's assertions are irrelevant.  Kodiak's assertions concerning the underlying transaction are relevant for purposes of establishing its meritorious defenses.  *See TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 700 (9th Cir. 2001) (a party's burden to allege facts that would constitute a defense is "not extraordinarily heavy").  It is Plaintiffs' factual assertions that are not relevant to

---

[2]     In disputing facts in opposition to a Rule 60(b) motion, Plaintiffs recite extensively from the Temporary Restraining Order. (See, e.g., Dkt. 154, at 8). By definition, the TRO, which was drafted by Plaintiffs, did not contain any findings on the merits.  At best, Judge Huff found that one or more of the Plaintiffs raised a fair question regarding their claim to the disputed funds, and the transcript of the hearing reflects reluctance even on this point.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS

the instant motion.  The bulk of Plaintiffs' assertions and arguments are better reserved for trial, than in opposition to a Rule 60(b) motion.  At this stage, it suffices to say that the parties disagree about a myriad of material facts, which itself only provides further reason to vacate the default judgment.[3]

### 3.   **Plaintiffs fail to squarely address _Frow_.**

Plaintiffs decline to address the application of _Frow_, instead simply concluding in a footnote, without explanation, that the circumstances in which it applies "do not exist here." (Dkt 154, fn. 7).  Kodiak overwhelmingly establishes the presence of those circumstances, including the fact that Plaintiffs assert the same exact allegations and claims against Kodiak and Stoen and seek the exact same relief, apparently on a joint and several basis.  Plaintiffs' failure to even try to argue that the claims against Kodiak were somehow different than the claims against Stoen is telling of the fact that they are completely indistinguishable, and that _Frow_ squarely applies.

### 4.   **Plaintiffs fail to demonstrate any prejudice.**

It is with good reason that Plaintiffs' argument consists of only three sentences, not one of which is factual in nature.  Plaintiffs are incapable of establishing any prejudice. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying the resolution of a case." _TCI Group Life Ins. Plan v. Knoebber,_ 244 F.3d at 691, 701 (9th Cir 2001). A party must show that the relief "would hinder the plaintiff's ability to pursue its claim, due to a loss of evidence, increased difficulties of discovery, or a greater opportunity for fraud or collusion."  _Id._ Plaintiffs do not assert that any of these circumstances exist here.  Indeed, Plaintiffs cannot even establish a delay.  On April 4, 2011, Plaintiffs filed a First Amended

---

[3]    Although again irrelevant to the instant motion, Plaintiffs' assertion in a footnote that Stoen and Ozanne confirmed in their depositions that the Emerald Isle Trust was never funded, never had any assets and never filed any tax returns (Dkt 154,  at 19, fn 9) is such a gross mischaracterization of their respective testimony, that Kodiak would be remiss to not so state.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
SERVICE AND DISMISS

Complaint by which they added five new parties and new allegations and causes of action against existing parties.  Most of the new defendants have not even been served yet.  This case has just begun.  Although delay alone is insufficient to demonstrate prejudice, even delay does not exist here.

Instead of demonstrating prejudice, Plaintiffs offer two bare conclusions: that Kodiak and Stoen are alter egos (despite that Stoen was only one of four members and one of two managers), and that Plaintiffs would be prejudiced by the setting aside of the default judgment.  (Dkt. 154 at 20.) Plaintiffs cite to *Shanghai Automation Instrument Co., Ltd, v. Kuei*, 194 F.Supp.2d 995 (N.D. Cal. 2001) in support of this conclusion, without any explanation of its holding or application to this case.[4]

Plaintiffs' reliance upon *Kuei* is misplaced, and they leave the Court and Kodiak to guess at how it applies to this case, perhaps because it does not begin to apply to this case.  *Kuei* was a district court's adoption of a magistrate's Report and Recommendation, in a case which came before the magistrate on an unopposed motion for default judgment.  *Id.* at 997.  *Kuei* involved a massive fraud by two individuals upon the plaintiff company, which was located in China.  *Id.* at 997-998.  The parties had entered into a joint venture agreement relative to the assembly of computers in China for export to California.  *Id.* at 998.  Unbeknownst to the plaintiff, the defendants secretly owned the Taiwanese corporation from which the components were purchased and the California corporation that was ordering the laptops. *Id.*  The defendants converted 8,000 laptops from the joint venture, and approximately $7 million in loan proceeds. Around the same time that he was perpetrating this scheme, Kuei was arrested in China for fraud in connection with another "business venture."  *Id.* at 998-99.

---

[4]       Plaintiffs actually cited to a slightly different case name and page number, but the case cited by Kodiak is the case to which Plaintiffs intended to cite.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS

The magistrate concluded that the various entities created by Kuei to perpetrate the scheme were "his alter egos," that Kuei "may have disappeared from the local area," and that "[g]iven defendant Kuei's international connections, and that there is a substantial likelihood that his assets may be disbursed or transferred out of this country." *Shanghai Automation Instrument Co., Ltd, v. Kuei*, 194 F.Supp.2d at 1005.  The magistrate further found, calling it the most important factor, that "the sole non-defaulting defendant is not likely to defend this suit" because he "completely failed to respond to discovery requests, and has not appeared or filed any opposition to the motion for default judgment" and he had "filed a petition in the Bankruptcy Court and the case against him in this matter has been stayed." *Id.*  The magistrate further found that there was nothing that suggests "a serious dispute concerning the material facts," and that all defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion." *Id.*  The magistrate accordingly entered default judgment, and in so doing noted that, based upon the circumstances, the plaintiff was "likely to suffer significant prejudice were recovery delayed," because operations of the various companies had been suspended, Kuei may have disappeared from the local area, and his international connections created a "substantial likelihood that his assets may be disbursed or transferred out of this country." *Id.* at 1004-05.

Plaintiffs' reliance upon *Kuei* is misplaced.  None of the factors present in the case are present here.  No defendant here has been charged with a crime, filed bankruptcy, disappeared from the area, is a Chinese nation, or has international connections to create a "substantial likelihood" that their assets "have been disbursed or transferred out of this country."  Kodiak is a Nevada corporation in good standing.  It has appeared in this case, and stands ready to defend.  The "non-defaulting" defendants are defending this case.  The material facts are disputed.  Plaintiffs' bare conclusion that Kodiak and Stoen are alter egos does not present a situation even

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
SERVICE AND DISMISS

remotely analogous to the extraordinary circumstances present in *Kuei*. Moreover, *Kuei* involved the entry of default judgment against a defendant that had disappeared and was unlikely to reappear, as opposed to a defendant like Kodiak, which although never served, stands ready to defend upon service or in the event the Court finds service to have been made. *Kuei* does not in any manner support the denial of Kodiak's motion, much less on grounds that Plaintiffs would be prejudiced by the Court setting the default judgment aside.

**D.  CONCLUSION**

Kodiak Family, LLC respectfully requests the Court to quash service and dismiss the case; or in the alternative to set aside the default judgment and enter such other relief as the Court deems appropriate.

DATED:  May 16, 2011

Justin R. Stockton

By: /s/ Justin R. Stockton
Attorney for Defendant KODIAK FAMILY, LLC

**CERTIFICATE OF SERVICE**
*O'M AND ASSOCIATES, LLC, et al . v. BRENDAN K. OZANNE, et al.*
**USDC (SD) Case No.  10-CV-2130 AJB (RBB)**

**UNITED STATES DISTRICT COURT**                    )
                                                    )ss
**SOUTHERN DISTRICT OF CALIFORNIA**                 )

I am a citizen of the United States and employed in Encinitas, California.  I am over the age of 18 and not a party to the within actions; my business address is 1021 Calle Anacapa, Encinitas, California 92024.

**On May 16, 2011, I served the document(s) entitled, REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SERVICE AND DISMISS, OR IN THE ALTERNATIVE, TO SET ASIDE DEFAULT JUDGMENT, on the interested parties in this action by placing true and correct copies thereof enclosed in a sealed envelope(s) addressed as stated below:**

**SEE ATTACHED SERVICE/MAILING LIST**

☐ **(BY MAIL)**:       I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Encinitas, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(BY FACSIMILE TRANSMISSION)**:        I caused a true copy thereof from sending facsimile machine telephone number 760-633-1486 to be sent via facsimile to the above listed names and facsimile numbers and received confirmed transmission reports indicating that this document was successfully transmitted to the parties named above.

☐ **(VIA OVERNIGHT MAIL)**:    I deposited such envelope to be placed for collection and handling via UPS following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for UPS.  On the same day that material is placed for collection, it is picked by UPS at Encinitas, California.

☐ **(BY HAND DELIVERY)**:       I caused each such envelope(s) to be delivered by hand to the addressee(s) mentioned in the attached service/mailing list.

☒ **(BY ELECTRONIC MAIL)**      By transmitting a true copy thereof to the electronic mail addresses as indicated below.

I declare under penalty of perjury under the laws of the United States that the above true and correct and was executed on May 16, 2011, at Encinitas, California.

/s/ Justin R. Stockton
Justin R. Stockton

16

**SERVICE/MAILING LIST**

*O'M AND ASSOCIATES, LLC, et al . v. BRENDAN K. OZANN, et al.*
USDC (SD) Case No. 10-CV-2130 AJB (RBB)

| | |
|---|---|
| Patrick C. Keeley, Esq. (Pro Hac Vice)<br>PICCIONE, KEELEY & ASSOCIATES, LTD.<br>122C South Country Farm Road<br>Wheaton, Illinois 60187<br>Telephone: (630) 653-8000<br>Facsimile: (630) 653-8029<br>Email: pkeeley@pkalaw.com | Attorneys for Plaintiffs MBM<br>SETTLEMENTS, LLC; O'M AND<br>ASSOCIATES, LLC and PRESERVE<br>CAPITAL, LLC |
| Peter C. Haley, Esq.<br>J. Scott Miller, Esq.<br>NIELSEN, HALEY & ABBOTT, LLP<br>44 Montgomery Street, Suite 750<br>San Francisco, California 94104<br>Telephone: (415) 693-0900<br>Facsimile: (415) 693-9674<br>Email: fpuente@nielsenhaley.com<br>       smiller@nielsenhaley.com | Attorneys for Plaintiffs MBM<br>SETTLEMENTS, LLC; O'M AND<br>ASSOCIATES, LLC and PRESERVE<br>CAPITAL, LLC |
| David A. Veljovich, Esq.<br>VELJOVICH LAW GROUP<br>701 Palomar Airport<br>Suite 300<br>Carlsbad, CA 92011<br>Phone: (760) 931-5680<br>Facsimile: (760) 454-2431<br>Email: david@carlsbadlegal.com | Attorneys for Defendants DAWSON &<br>OZANNE; BRENDAN K. OZANNE and<br>BRIAN C. DAWSON |
| Douglas A. Pettit, Esq.<br>PETTIT KOHN INGRASSIA & LUTZ, PC<br>11622 El Camino Real, Suite 300<br>San Diego, CA 92130<br>Telephone: (858) 755-8500<br>Facsimile: (858) 755-8504<br>Email: dpettit@pettitkohn.com | Attorneys for Defendants DAWSON &<br>OZANNE; BRENDAN K. OZANNE and<br>BRIAN C. DAWSON |
| Adam L. Saper<br>HINSHAW & CULBERTSON LLP<br>222 N. LaSalle St., Suite 300<br>Chicago, IL 60601<br>Telephone: (312) 704-3000<br>Facsimile: (312) 704-3001<br>Email: asaper@hinshawlaw.com | Attorneys for Defendant MATTHEW<br>STOEN |

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gary E. Devlin
HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
Telephone: (310) 909-8000
Facsimile:  (310) 909-8001
Email:  gdevlin@hinshawlaw.com

Attorneys for Defendant MATTHEW
STOEN

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
SERVICE AND DISMISS