UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O'M AND ASSOCIATES, LLC, an Illinois limited liability company, dba O'MALLEY AND ASSOCIATES, et al., <br><br> Plaintiff, <br><br> v. <br><br> BRENDAN K. OZANNE, BRIAN C. DAWSON, AND DAWSON & OZANNE, a California general partnership, as escrow agent, et al., <br><br> Defendants. | Case No.: 10cv2130 AJB (RBB) <br><br> ORDER <br><br> [Doc. Nos. 122, 138, 141, 150, 190, 206 and 209] |

On September 16, 2011, a hearing was held on the record in this case on the above referenced motions. Based upon the reasons set forth herein and on the record, the Court rules as follows:

1) the parties Joint Motion to Continue Hearing Date, Doc. No. 206, is **DENIED**;

2) the Motion to Certify Judgment Against Kodiak Family Trust, Doc. No. 122, is **DENIED** for the reasons set forth on the record;

3) the Motion to Quash Service and Dismiss and to Set Aside Judgment by Kodiak, Doc. No. 138, is **GRANTED** for the reasons set forth on the record;

4) the Motion to Withdraw, Doc. No. 209, the Motion to Dismiss, Doc. No. 150, is **GRANTED** and the Motion to Dismiss, Doc. No. 150, is hereby **WITHDRAWN**;

5) the Motion to Dismiss by Bank of Utah, Doc. No. 190, is **GRANTED** for the reasons set forth on the record and in this Order; and

6) the Motion to Dismiss by Dawson & Ozanne, Doc. No. 141, is hereby GRANTED as set forth below.

### *Background*

This action centers around the failed sale of life insurance policies (hereinafter "Life Policies"). (Compl. ¶ 1.) Plaintiffs are the sellers of the Life Policies. (*Id*. ¶ 11.) O'M & Assoc. is an Illinois Limited Liability Corporation (hereinafter "LLC") providing financial services and insurance based products including life insurance. There are twenty-eight Life Policies at issue in the instant action.[1] Preserve Capital is an Illinois LLC that purchased three of the life insurance policies for investment. The remaining twenty-five Life Policies are each individually owned by insurance trusts created by the insured and designating the beneficiary of the insured's choice. Preserve Capital acquired the right to sell the beneficial interest in life insurance trusts holding the life insurance policies from the individual owners of these twenty-five Life Policies. All 28 Life Policies were offered for sale through Emerald Isle LSF Limited. To facilitate the sale, the beneficiaries assigned their beneficial interests in the insurance trust to MBM Settlements, LLC, which is solely owned by Preserve Capital.

Defendant Stoen was the buyer's agent and manager for Defendant Kodiak Family, LLC. (*Id*. ¶ 7.) Kodiak in turn was the agent for the real buyer of the Life Policies. (*Id*. ¶ 16.) Defendant Brendan Ozanne ("Ozanne") represented Kodiak and is alleged by Plaintiffs to be the escrow agent for the sale. (*Id*. ¶¶ 5, 15.) Ozanne is a partner for the general partnership Dawson and Ozanne. (*Id*. ¶ 6.)

Ozanne presented Plaintiffs with an offer to buy the Life Polices on January 12, 2010, and O'M accepted the offer the following day. (Compl. ¶¶ 18-19.) The sales agreement called for the seller to deposit 3% of the purchase price of the Life Policies in Dawson and Ozanne's Attorney Client Trust

---

[1] There appears to be disagreement between Plaintiffs and Defendants as to whether the Life Policies are Investor-originated or Stranger-originated (hereinafter "IOLI/STOLI" ) life insurance policies. Defendants contend that the policies are, however, Plaintiffs' argue that each of the Life Policies was originated as part of the estate planning conducted by O'M & Assoc. for each individual and the clients and insurance carriers were advised that ultimate sale of the policies was a possibility.

Account ("IOLTA"). (*Id.* ¶ 22). Pursuant to the agreement, Plaintiffs transferred $678,750.60 to the IOLTA account through fours separate transactions in February 2010.[2] (*Id.* ¶¶ 22, 23, 27.)

Bank of Utah, as the trustee for the Buyer's trust, the Emerald Isle LSF Limited Trust, executed the Limited Liability Company Interest Sales and Assignment Agreement ("Purchase Agreement") on or about April 15, 2010 for the purchase of the Life Policies by the buyer through transfer of Preserve's Interest in MBM Settlements, LLC.[3] The Purchase Agreement was executed for the buyer by Bank of Utah, not individually, but as Trustee for the Emerald Isle LSF Limited Trust. Plaintiffs causes of action against Bank of Utah all rest on the April 30, 2010 letter from the Bank of Utah trustee.

The sales transaction for the twenty-eight Life Policies did not close on May 31, 2010.[4] (Compl. ¶ 37.) In mid-July, 2010, Ozanne provided Plaintiffs with a new buyer for the Life Policies. (*Id.* ¶ 38.) No closing has occurred with a new buyer. (*Id.* ¶ 39.) Starting August 2010, Plaintiffs, through counsel, sent written demands to Defendants asking for return of their funds. No money has been returned to them to date. (*Id.* ¶ 40-45.)

## *Discussion*

During the September 16, 2011 hearing, the Court ruled on Bank of Utah's motion to dismiss the First Amended Complaint (hereinafter "FAC"), Doc. No. 190,[5] as set forth on the record, but stated that

---

[2] Pursuant to an addendum to the sales agreement, Plaintiffs claim that this fee is a "break up" fee and is only non-refundable to them if the transaction does not close under one of three conditions: (1) if the seller is unable to provide required documentation prior to closing, (2) if the seller is unable to procure the signatures required to close the transaction, or (3) if the life insurance carriers contest the validity of any the policies. (*Id.* Ex. A1.) On the other hand, Defendants claim that the fees are for performing due diligence and no escrow instructions were ever completed. (*Id.* ¶ 24.)

[3] Plaintiffs admit that MBM was not even in existence at the time of the actions giving rise to this litigation, but argue that MBM gained a beneficial interest in the oral agreement when the policies were assigned to MBM in order to transfer the policies to the buyer. FAC ¶¶ 39, 43-46; Pla. Opp. Doc. No. 176, p. 30:10-13.

[4] Only one of the 28 Life Policies ever sold, and it sold for 10% of face value, not the 16% originally sought by Plaintiffs.

[5] The Motion to Dismiss by Bank of Utah, Doc. No 190, argued that Plaintiffs FAC fails to state a claim pursuant to 12(b)(6) and 8(a)(2). The Court GRANTED the Bank of Utah's motion to dismiss finding: 1) the Plaintiffs misrepresentation claims fail as stated; and 2) the Plaintiffs cannot cure this defect by introducing extraneous evidence in the opposition that is not set forth in the FAC. The Plaintiff was in possession of the extraneous evidence from the opposition prior to filing the FAC, however, the Plaintiffs provided no explanation in the moving papers or during the hearing for the failure to include this information in the FAC. While Plaintiffs were granted leave to amend in this instance, the Plaintiffs

a written Order would follow on the common issues of standing and law raised in the motions to dismiss, Doc. Nos. 141 and 190. The motion, Doc. No. 141, filed by Brendan Ozane, Brian Dawson and Dawson & Ozanne, moves to dismiss Counts II, III, IV, V, VII, VIII and X of the FAC pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).[6]

*I. Issues of Standing*

As a preliminary matter, there are issues of standing that must be addressed. The pending motions to dismiss have raised serious questions regarding O'M & Assoc. and MBM Settlements standing to bring any claims whatsoever in this case. The Court's review of the parties moving papers and the FAC reveal that Plaintiffs admit that MBM Settlements did not exist at the time of the actions giving rise to this litigation and Plaintiffs have also admitted that O'M & Assoc. was acting as Preserve's agent.[7] Since the record contains no assignment of Preserve's rights in the contract to any other Plaintiff, O'M & Assoc. and MBM Settlements clearly lack standing.

The Defendants also argue that Preserve lacks standing on all but three of the twenty-eight Life Policies, because with regard to the remaining twenty-five Life Policies, Preserve merely obtained the

---

are warned that further leave to amend to include information in Plaintiff's possession will not be granted absent extreme good cause.

While not specifically addressed during the hearing because the Court dismissed the FAC's misrepresentation claims pursuant to Rule 12(b)(6), the Bank of Utah also argued that the claims against the Bank of Utah in the FAC should be dismissed with prejudice because the misrepresentations alleged were made by a Bank of Utah Officer acting in his capacity as Trustee of the Emerald Isle LSF Limited Trust, not on behalf of the Bank of Utah. The Court finds Bank of Utah's argument that the FAC failed to sufficiently state a claim against the Bank of Utah, as pled, to have merit and thus constitute an additional ground upon which to GRANT Bank of Utah's motion to dismiss.

[6] Specifically, Defendants argue: 1) with regard to the Breach of Fiduciary Duty (Counts II and VII) that Plaintiffs, MBM Settlements and O'M & Assoc., lack standing to assert a claim or seek relief based on the failed transaction; 2) with regard to Conversion (Count III) that Plaintiffs Conversion claim fails because the FAC fails to allege sufficient facts to support a claim for relief; 3) with regard to Unjust Enrichment (Count IV) that Plaintiffs claim fails because it is not a separate claim but instead an equitable remedy; 4) with regard to Declaratory Judgment (Count V), that this claims is unnecessary and duplicative of the Plaintiffs substantive claims; 5) with regard to the Negligent Interference with Prospective Economic Advantage claim (Count VIII), that Plaintiffs cannot plead the necessary elements because the parties were in privity and a contracting party and its agents owe no duty to refrain from interfering with their own contract; and 6) with regard to the Fraud claim (Count X) that this claim lacks specificity and fails to comply with Rule 9(b).

[7] When an agent makes a contract on behalf of a disclosed principal, the principal and the third party are the parties to the contract, and the agent is not a party to the contract unless the agent and third party agree otherwise. Restatement (Third) of Agency § 6.01. The third party has the burden of showing a manifestation of assent by the agent to such an agreement. Restatement (Third) of Agency § 6.01 cmt. d.

authorization of its clients (the insureds) to sell the policies owned by them. (FAC, Doc. No. 129, ¶ 1). Since the claims in the FAC arise out of the contracts and the alleged fraudulent inducement of those contracts, not from the insurance trusts or any assignment of rights with respect to those trusts, the Court finds that based upon the causes of action and facts set forth in the FAC, that Preserve lacks standing with regard to the remaining twenty-five Life Policies.

Based upon the foregoing, Defendants' motion to dismiss, Doc. No. 141, claims by O'M & Assoc. and MBM Settlements, and Preserve's claims with regard to the twenty-five Life Policies for breach of fiduciary duty set forth in Counts II and VII of the FAC are hereby GRANTED.

## *II. Plaintiffs' Conversion Claims*

Defendants argue that the conversion claims set forth in Count III of Plaintiffs' FAC fail to allege sufficient facts to support a claim for relief.  Defendants contend that Count III is barred by the economic loss doctrine. A conversion claim sounds in tort. *See Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, *3 (N.D.Cal. 2007). Subject to certain exceptions not applicable here, the economic loss rule bars recovery in tort for economic damages arising out of matters governed by contract. *Id.*, *KB Home v. Superior Ct.*, 112 Cal.App.4th 1076, 1079, 5 Cal.Rptr.3d 587 (2004).

In the case at bar, the funds are the subject of the express contract alleged by Plaintiffs. In the FAC, Plaintiffs quote the contract extensively and the parties to the contract specifically contemplated when the funds would and would not be refundable and agreed to those terms. (*See* Ex.'s A and A-1). Plaintiffs allege in Count I that the failure to return the funds is a breach of the contract. Plaintiffs cannot recover purely economic losses in tort that they allege are the subject of an express contract. Based upon the foregoing, the Defendants motion to dismiss is hereby GRANTED and Plaintiffs conversion claims set forth in Count III are **DISMISSED WITH PREJUDICE**.

## *III. Plaintiffs' Unjust Enrichment Claims*

Defendants argue that the unjust enrichment claims set forth in Count IV of Plaintiffs FAC fail because they are not separate claims, but are instead an equitable remedy. While some state and federal courts in California are split as to whether unjust enrichment can be an independent claim or merely an equitable remedy, courts in California's Southern District have regularly held that unjust enrichment is

not a separate claim.[8]  Based upon the foregoing, Defendants motion to dismiss Count IV is hereby **GRANTED** and Plaintiffs' unjust enrichment claims (Count IV) are **DISMISSED**.

### IV. Plaintiffs' Declaratory Judgment Claims

The Defendants argue that Plaintiffs' declaratory judgment claims set forth in Count V of the FAC are unnecessary and duplicative of the Plaintiffs substantive claims. Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986). "[T]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate[;]" however, "the availability of other adequate remedies may make declaratory relief inappropriate."

In the case at bar, Plaintiffs seek a declaratory judgment that the funds are refundable under the terms of the alleged written contract, which is also the subject of Count I for breach of contract, Count III for conversion, Count IV for unjust enrichment, and Count X for fraud. Plaintiffs seek recovery of the funds under each of these counts.  As such, the Court finds the Plaintiffs' declaratory judgment claims set forth in Count VII to be both unnecessary and duplicative of the Plaintiffs' substantive claims.  Based upon the foregoing, the Defendants motion to dismiss is **GRANTED** and Plaintiffs' declaratory judgment claim set forth in Count V of the FAC is **DISMISSED**.

### V. Plaintiffs' Claims of Negligent Interference with Prospective Economic Advantage

The Defendants argue that Plaintiffs' claims of negligent interference with prospective economic advantage[9] set forth in Count VIII of the FAC fail to plead the necessary elements because the parties

---

[8] *Express Cos. v. Lifeguard Med. Solutions, LLC*, 2010 WL 2574213, *15-16 (S.D.Cal. 2010); *Johns v. Bayer Corp.*, 2010 WL 2573493, *14-15 n.3 (S.D.Cal. 2010).

[9] The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates:
(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff;
(2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship;
(3) the defendant was negligent; and
(4) such negligence caused damage to plaintiff in that the relationship was actually interfered

were in privity and a contracting party and its agents owe no duty to refrain from interfering with their own contract. Since the tort duty not to interfere with the contract falls only on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance,[10] a party to a contract cannot recover from the other party to the contract for interference with prospective economic advantage for what is essentially a breach of contract.[11] Neither a party to a contract, nor its agent, may be liable for interference with their own contract or related subcontracts that would require the performance of the party to the primary contract.[12] Since Plaintiffs are attempting to recover tort damages from Defendants for their alleged breach of contract, the Court hereby **GRANTS** Defendants' motion and **DISMISSES** the Plaintiffs' claims of negligent interference with prospective economic advantage **WITH PREJUDICE**.

### *VI. Plaintiffs' Fraud Claims*

The Defendants argue that Plaintiffs' fraud claims set forth in Count X of the FAC are not pled with the requisite particularity or specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiffs' allegations set forth in paragraphs 155-159 of the FAC fail to: 1) identify which statements were false and how they were false; 2) identify who Defendant Ozanne allegedly made the fraudulent statements to, the dates of the fraudulent statements, how each Plaintiff relied on the statements or how the reliance was justified. The Court agrees. To comply with Rule 9(b), the allegations must identify the who, what, when, where and how of the fraud, which means that the Plaintiff must plead the time, place and specific content of the misrepresentations as well as the identities of the parties to the misrepresentations. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Based upon the foregoing, the Defendants' motion to dismiss Plaintiffs' fraud claims set forth in Count X of the FAC is **GRANTED**.

---

with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship. *Venhaus v. Shultz*, 155 Cal.App.4th 1072, 1078, 66 Cal.Rptr.3d 432 (2007).

[10] *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 513, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994).

[11] *JRS Products, Inc. v. Matsushita Elec. Corp. of America* (2004) 115 Cal.App.4th 168, 181-83.

[12] *PM Group, Inc. v. Stewart* (2007) 154 Cal.App.4th 55, 65.

### *Conclusion*

For the reasons set forth by the Court on the record during the September 16, 2011 hearing:

1) the parties Joint Motion to Continue Hearing Date, Doc. No. 206, is **DENIED**;

2) the Motion to Certify Judgment Against Kodiak Family Trust, Doc. No. 122, is **DENIED**;

3) the Motion to Quash Service and Dismiss and to Set Aside Judgment by Kodiak, Doc. No. 138, is **GRANTED**;

4) the Motion to Withdraw, Doc. No. 209, the Motion to Dismiss, Doc. No. 150, is **GRANTED** and the Motion to Dismiss, Doc. No. 150, is **WITHDRAWN**; and

5) the Motion to Dismiss by Bank of Utah, Doc. No. 190, is **GRANTED** for the reasons set forth on the record and the additional reasons set forth herein.

For the reasons set forth above, the Motion to Dismiss by Dawson & Ozanne, Doc. No. 141, is **GRANTED** as to Counts II, III, IV, V, VII, VIII and X of the FAC and Counts III and VIII are **DISMISSED WITH PREJUDICE**. Plaintiffs shall file their amended complaint pursuant to this Order **on or before November 6, 2011 and serve** Kodiak Family Trust on or before December 6, 2011..

IT IS SO ORDERED.

DATED: September 21, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge